# Brown *versus* Hays.

1. By the erection of Polk township in 1851, all of warrant 4023 containing 1026 acres except 16 acres, remained in Polk, the 16 acres were thrown into Heath township. Up to 1859, it was assessed in Polk and taxes paid in Polk; it was afterwards assessed as 4023 in the warrantee name as 726 acres; 300 acres were assessed in the same name and number in Heath, the change was not made by the board of revision and was without the knowledge of the owner, who paid all the taxes demanded for 4023 as in Polk. The 300 acres were sold for taxes as assessed in Heath. *Held*, that the purchaser took no title.

2. The return of the assessors fixing the identity of a tract and its liability to taxation is binding on the commissioners.

3. The assessment in Polk being for 4023 and taxes paid accordingly, was a discharge of the tract although assessed as 726 acres.

4. The assessors of Polk had no authority to divide the tract in that township into separate parcels.

5. Assessors must assess and return lands in single tracts according to their ownership.

6. An assessor may follow the division made by the owner.

7. Assessing a wrong number of acres would not of itself be notice to the owner that but part of the tract was assessed.

8. The number of acres is simply the description and does not overturn the number of the tract and the name of the warrantee.

9. Presumptions of law exist only when public policy or the ends of justice demand it.

10. *In fictione juris, semper existet æquitas*, applied.

October 21st 1870.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

[Brown *v.* Hays.]

Error to the Court of Common Pleas of *Jefferson county :* No.
21, to October and November Term 1871.

On the 31st of October 1867, James H. Hays brought an
action of ejectment against Henry Brown for 312 6-10 acres of
land in Polk township.

The trial was December 15th 1869, before Campbell, P. J.

The plaintiff claimed the land in controversy as part of war-
rant No. 4023, dated August 30th 1793, to John Nicholson for
1000 acres and survey September 31st for 1026 acres, 70 perches,
returned and accepted August 14th 1794. The title to this war-
rant was vested in the plaintiff: he resided in Pittsburg.

The defendant claimed the land in controversy, which was part
of No. 4023, under a tax sale of 300 acres assessed in Heath
township. Polk township was erected out of Heath and Warsaw
townships in 1851.

The defendant gave in evidence the assessment for Heath
township in 1859 of No. 4023, 300 acres of land, in the name of
John Nicholson; treasurer's sale June 11th and deed to county
commissioners November 2d 1860; deed, commissioners to Mary A.
Hastings and G. A. Jenks March 7th 1866; deeds September
11th and December 1st 1866, from Hasting and Jenks to defend-
ant. Hastings and Jenks had the 300 acres surveyed partly in
Heath and partly in Polk township, 10 acres in Heath township
were included in this survey; 16 acres of No. 4023 had been
thrown into Heath township by the division.

The plaintiff, in rebuttal, gave evidence of assessments of No.
4023 in Polk township, in the name of Nicholson, as 1026 acres
from 1853 to 1858 inclusive, as 726 acres from 1859 to 1861
inclusive, and as 1026 acres from 1862 to 1865 inclusive. In
1866 it was entered in the assessment book, first as 1026; this
was erased and 726 written over it. He gave evidence from the
land book;—tax in Polk township on No. 4023 paid 1754 and 1855
by J. B. Evans for plaintiff,—1856 and 1857 by Paul Darling for
plaintiff,—1858 and 1859 as 1026 and 726 acres paid by Darling,
and 300 acres sold to the county,—1860 and 1861 paid by plaintiff
726 acres,—1862 and 1863 as 1026 paid by Darling. Plaintiff
gave evidence that he had employed T. K. Litch and Darling to
pay the taxes, that they paid, as they believed, all the taxes
assessed against plaintiff's land in Jefferson county. Darling went
to the treasurer's office to pay plaintiff's taxes, they got the land
book, referred to the Nicholson warrant No. 4023, the treasurer
made a statement from the book, and Darling paid the taxes
according to the bill; he paid all the treasurer demanded. Wit-
ness saw nothing on the land book of an entry of 300 acres.
Once plaintiff told witness that he did not think some of this land
was worth paying taxes for and talked of throwing some out.

The treasurer, H. Hoch, testified that in 1860 Darling came to

[Brown *v.* Hays.]

pay him taxes for Hays, he inquired only for taxes in Polk township; witness did not then know of the 300 acres. In 1858 the assessment was for 1026 acres, in 1860 it was for 726 acres, the commissioners made the change.

Joseph Henderson, clerk of the commissioners, testified for defendant: the entries of assessment were made by him, by order of the commissioners; they were generally made with the assessors and commissioners. "I don't know that there was any board of revision about it; the commissioners made the changes upon the representations of the assessors or some one in whom they had confidence; these changes were made by the assessor or some one else, but I don't mind of a 'regular meeting for revision and making changes; we did it when they thought it was right. The changes are usually made on the representations of the owner, agent or assessor, but not always."

The plaintiff's points and their answers were—

"1. If the jury believe from the evidence that James H. Hays, by his agent, went to the treasurer's office and inquired of the treasurer for the amount of his taxes on the tract of land in controversy among others, and paid the amount demanded of him by the treasurer, whether that were the full amount or not, his land would be discharged from liability, the sale of all or any part thereof would be void, and the verdict should be for the plaintiff."

"We answer plaintiff's first point in the affirmative, unless the assessment of 300 of his tract had been returned in Heath township with his knowledge or authority."

"2. The assessor of Polk township was the proper officer to assess the tract in controversy, and having done so, all interference therewith by the assessor of Heath township or the commissioners was illegal and void, and the assessment of a part of the tract in Heath township, and the sale thereon was void, and such sale conferred no title on the purchaser."

Answer: "If the jury find the facts as alleged in this point, we answer it in the affirmative."

"3. Hays, the plaintiff, cannot be compromised by the mistake or error of the taxing officers. Having returned the full amount contained in this tract, and having paid all that the treasurer required from him, his land was thereby discharged from the demands of the public, and nothing was left on which to· found a sale for any part of it."

"We answer this point, if the commissioners erroneously assessed 300 acres of his tract No. 4023 in Heath township when it was not there, and this without his consent or knowledge, and he paid all the taxes on the tract assessed in Polk township, and all that he knew of against it, and was misled or failed to pay by the mistake of the county officers, he would not lose his title by

their, default, and this point is also answered substantially in the affirmative."

The defendant's points and their answers were—

"1. In the absence of testimony the presumption is that the plaintiff, James H. Hays, returned the land in dispute to the assessors, and that the assessments as made were done by his order."

"We answer defendant's first point in the affirmative, in the absence of evidence, but under the evidence, that the change was made by the clerk of the commissioners under their directions, and it not appearing that the plaintiff was present, and that he resided in Pittsburg, would, if believed, make the presumption but slight if it would avail at all."

"2. A general offer to pay the taxes of James H. Hays in *Polk township*, without specifying the location or quantity of the land to be paid for, as proven by Paul Darling and Henry Hoch, would not avoid the defendant's title in this case."

"If the plaintiff paid all that was demanded of him; if he described the tract correctly, if an erroneous assessment of a part of it had been made without his knowledge or consent by the county officers, a payment in good faith of all the taxes claimed against it by the treasurer would discharge the whole tract."

"3. Unless the jury find that the taxes of the year 1859 were actually paid on the land claimed by the defendant before the treasurer's sale of the year 1860, their verdict should be for the defendant."

"We decline to answer this point as requested."

The court further charged:—

"If the plaintiff owned 300 acres of land in Polk township and had no other land in the county, and it was returned as 300 acres in Heath township, the number of the warrant and the name of the warrantee being stated correctly, a sale of such tract by the treasurer would confer a good title on the purchaser. The misdescription or misnomer of the township would be only an irregularity and would not affect the validity of the sale. [But if the plaintiff for a number of years had been and was the owner of Nicholson warrant No. 4023 in Polk township, and had it returned an entire tract, 1026 acres, and paid the taxes on it, and in 1859 it was returned by the assessor of that township in the same way, and the same year the assessor of Heath township, without the knowledge and consent of the owner, returned 300 of that tract as situated in his township, and if after the return had been made and the assessment made out, he, or he and the commissioners, marked the Polk township return 726 acres without changing the valuation or tax, and a tax sale was made of the 300 as returned in Heath township, it would confer no title on the purchaser.] If the taxes were paid on the tract as returned in

[Brown v. Hays.]

Polk township, it would be a payment of all the taxes on the tract, and the tax on the 300 would be a double assessment, and a sale of it would be void. The land returned in Polk township was correct, and the land was all in that township but a few acres, and they had not the right to divide the tract and assess it in separate tracts so as to mislead the owner, and such division, without his consent or knowledge, not rendered necessary by township lines, is wrong, and calculated to deceive."

The verdict was for the plaintiff.

The defendant took out a writ of error, and assigned for error the answers to the points, and the part of the charge in brackets.

*G. A. Jenks* (with whom were *Jenks & Clark*), for plaintiff in error.—The assessment of land in the wrong township is irregular merely, not void: Stewart *v.* Shinefelt, 13 S. & R. 360; Miller *v.* Hale, 2 Casey 435; Montgomery *v.* Meredith, 5 Harris 47; Act of March 13th 1815, § 4, 6 Sm. L. 301, Purd. 995, pl. 35. There being no evidence to the contrary the presumption is that the plaintiff was cognisant of the alteration: Clark *v.* Dugan, 2 Jones 91. ' The plaintiff is barred by the limitation of Act of April 3d 1804, § 3, 4 Sm. L. 202, Purd. 995, pl. 36; Laird *v.* Hiester, 12 Harris 464; Burd *v.* Patterson, 10 Id. 223; Baird *v.* Cahoon, 5 W. & S. 540.

*A. L. Gordon* (with whom was *I. Gordon*), for defendant in error.—Paying all that was demanded by the treasurer was sufficient: Laird *v.* Hiester, Baird *v.* Cahoon, *supra;* Buff *v.* Tompkins, 11 Wright 359; Price *v.* Mott, 2 P. F. Smith 315; Deitrick *v.* Mason, 7 Id. 40. As to distinction between void and irregular sales, he cited Morton *v.* Harris, 9 Watts 324; Stewart *v.* Trevor, 6 P. F. Smith 374; McReynolds *v.* Longenberger, 7 Id. 13. This sale, being void, is not within the Act of 1804, which protects against irregularity only.

The opinion of the court was delivered, January 3d 1871, by

Agnew, J.—This case has leading features which, being determined, will render it unnecessary to consider the assignments of error in detail. The first and most important fact which, to a great extent, rules the case is, that lot No. 4023 of 1026 acres is one tract of land, and belongs to a single ownership. It all lies in Polk township, except an insignificant parcel caused by a slight deviation from the northern boundary of the tract in running the line of Polk township, leaving 16 acres in a narrow triangle lying within the township of Heath. Until 1859 it had all been assessed and taxed in Polk township, and Hays, the plaintiff, had paid the taxes accordingly. In 1859 the assessment was returned originally as 1026 acres in Polk township; but by some action of the

[Brown *v.* Hays.]

county commissioners not clearly explained, the assessment had been altered to 726 acres in that township. In the same year the duplicate and supervisors' return for Heath township exhibits an assessment of 300 acres of No. 4023 in Heath township. It was on this return the treasurer's sale took place in 1860, under which the defendants claimed. Joseph Henderson, the clerk of the commissioners, is unable to state at whose instance the change from 1026 to 726 acres in Polk township was made—all he can say is, he thinks it was on the representation of the assessor, or some one else in whom the commissioners had confidence. The strong probability is, it was caused by the incorrect, indeed false assessment made for Heath township; and unless it was done by way of revision by the board of assessors it was irregular. If the testimony of Henderson, the clerk, proves anything, it is that this alteration in the assessment of 4023 in Polk township was not done at the instance of the board of revision; for he "don't know (he says) that there was any board of revision about it." The 2d section of the Act of 3d April 1804 directs all unseated lands "to be valued and appraised as other property; and both the 8th section of the Act of 1799 (3 Smith's Laws 395), and the 2d and 4th sections of the revised Act of 15th April 1834 commit to the proper assessor the duty of taking the account, and making the return and valuation of the taxable property within his township. In Respublica *v.* Deaves, 3 Yeates 465, it was held that under the Act of 1799 the valuation of the assessors is binding on the county commissioners; and by a parity of reason, the return of the tract which fixes its identity and liability to taxation is more so. The 6th section of the Act of 15th April 1834 expressly provides for the assembling of the assessors, on a day to be appointed by the commissioners, to make the returns of the several assessments, when it shall be the duty of the assessors to point out errors, and if the errors be established, the commissioners shall correct the returns accordingly.

This being the legal system for the correction of errors in the assessment, it is an important fact that in consequence of Hays's residence in a remote part of the state, and his paying the taxes of 1859 by the hand of another not familiar with his lands, he had no notice of the assessment in Heath township. Having always before paid his taxes for his lands as lying in Polk township, he had no reason to suppose that his land was taxed elsewhere. His payment to the treasurer of all the taxes assessed in Polk township unquestionably operated to discharge all the land lying in that township from sale. The payment was for the taxes of lot No. 4023 in Polk township and not merely for 726 acres of land. The assessment was made by the number of the lot and also in the name of the original warrantee; indicating clearly the intent to assess the lot as a whole, and as a single ownership. As

further evidence that there was no intent to divide the land lying in Polk township, there is no assessment of the remaining 284 acres actually lying in that township. Indeed the assessor of Polk township had no authority to divide the tract or return that portion of the lot lying in Polk township in separate parcels. The acts relating to the assessment of unseated lands are plain, and require the assessor to assess and return the lands in his township in single tracts according to their ownership. He may follow the sale or division of the tract by the owner, but he has no power himself to cut up the property of a single owner and return it in parcels. The acts on this subject are collated by Huston, J., in Morton v. Harris, 9 Watts 326, showing conclusively that the entire process of assessment from the beginning to the end contemplates taxation and sale by single tracts following the title of the owner. The same principle governs even in the case of interfering surveys so far that when the assessment is made upon the younger survey, it is made upon the *entire* tract. See McCoy v. Michew, 7 W. & S. 390 and 391. This being the duty of the assessor, Hays would not be bound to know from the quantity of 726 acres that there had been an actual division of this tract in Polk township, the tract being assessed both by number and name of original warrantee. The number of acres is simply descriptive and would not overturn the number of the tract, the name of the warrantee, and the duty of the assessor. An argument still more conclusive may be drawn from the effect of a sale under the assessment in Polk township, had Hays omitted to pay his taxes in that township. As to this effect Williston v. Colkett, 9 Barr 38, is directly in point. Thus the assessment was of No. 4483, original quantity 999 acres, present quantity 200 acres, warrantee James Wilson, present owner A. J. Underhill. The treasurer's deed following this assessment was for 200 acres, but the real quantity in the tract was 600 acres, being three times the quantity sold. The court below held the assessment to be too vague; but on a writ of error this court decided that the deed passed the title to the whole 600 acres. "No man (says Coulter, J.) who reads the assessment can doubt the intent of the officer to assess all the land which was unseated on the warrant in the name of Wilson. Such is the obvious meaning and import of the assessment; the number of acres was mentioned as descriptive." It is true Coulter, J., laid some stress on the fact that Mann, the owner, had for two years before paid tax for only 200 acres, yet he did not rest the decision on that circumstance, but upon the effect of the assessment as extending to all the unseated land remaining in No. 4483. So in the present case had No. 4023 of 726 acres been sold for unpaid taxes, no one can doubt that the sale would have carried the entire quantity of No. 4023 lying in Polk township. There could be no presumption of an intent on part of the assessor to

cut off 284 acres of the tract lying in Polk township, or that the
assessor of Heath township would assess these 284 acres as lying
in Heath township when the fact was not so.   Then clearly the
rule which would divest Hays of his title to the whole of lot No.
4023 lying within Polk township for the non-payment of the taxes
assessed in Polk township, will sustain him against a sale made
after he had paid all the taxes for Polk township, demanded of
him by the treasurer, without notice to him that the residue of
his tract was assessed in Heath township.   The question is not
what would be the effect of a sale upon an irregular assessment
of 300 acres in Heath township, had there been no payment of
all the taxes assessed in Polk, but it is what is the effect of a pre-
vious payment of all the taxes against his lands lying in Polk
township.   His entire ownership in Polk was the subject of assess-
ment and taxation, and the payment of the whole tax so assessed
is co-extensive with the charge.

But it is argued that the primâ facie presumption is that the
assessment of 300 acres in Heath township was made at the 'in-
stance of Hays, and Clarke *v.* Dougan, 2 Jones 91, is referred to
as authority for the position.   But that was the case of a resident
seated tract, where the heirs of Keely claimed by the Statute of
Limitations, and endeavored to extend a constructive possession
to the lines of the warrant survey by an alleged payment of the
taxes for twenty-one years.   Keely, however, had suffered him-
self to be assessed sometimes for 50 acres, sometimes for 100
acres, sometimes for 200 acres, and sometimes for 300 acres, the
whole quantity in the survey.   It was in reference to such a case
C. J. Gibson said, it is the duty of the assessor to call on the
owner for information in respect to the value and quantity of his
property, and the presumption is he does it.   But no such pre-
sumption can be made here.   The tract was unseated, Hays, a
non-resident living in Pittsburg, who had always paid his taxes in
Polk township for his whole tract, No. 4023; the tract had been
so originally returned in 1859, but the assessment had been
altered without his knowledge or consent, and he paid the taxes
for 1859 by the hand of a stranger who had no special knowledge
of his lands.   In addition to all these circumstances, Mr. Hook,
the treasurer, states that the 300 acres assessed in Heath town-
ship had not been carried into his land-book when Darling paid
the taxes for Hays, for the reason that he himself did not then
know of that assessment.   Under all these facts there is no room
for a presumption of knowledge on part of Hays that his land
had been divided in quantities by the assessors' or commissioners
without even an ideal line of division, and 300 acres assumed to
be in Heath township, when in fact only 16 acres were within
Heath.   Presumptions of law exist only when public policy or
the ends of justice demand them.   *In fictione juris, semper ex-*

[Brown v. Hays.]

*istet equitas.* But what equity would exist in such a case as this, to take from one his property who has honestly paid all that was demanded of him, or that he had any reason to believe he owed? Looking at all the facts of this case, the judge committed no substantial or hurtful error in charging that if the taxes were paid on the tract as returned in Polk township, it would be a payment of all the taxes on the tract, and the tax on the 300 acres would be a double assessment, and a sale of it would be void. The language is not altogether precise, as there were 16 acres of the 300 which lay in Heath township on which taxes were not paid; but no question was made on the 16 acres, the great battle being for the recovery of the 300 acres, which the purchasers under the tax sale had surveyed off to suit themselves, there being neither line nor designation of the 300 acres by locality. What has been said answers also the argument founded on the curative provisions of the 4th section of the Act of 1815, and the decision in Stewart *v.* Bamfelt, 13 S. & R. 360, and Montgomery *v.* Meredith, 5 Harris 42, that though irregular the sale passed the title to the 300 acres. It is not necessary, therefore, to decide what would have been the effect of a sale of land lying in Polk township under an assessment of land as lying in Heath township, had there been no payment of the taxes for all the land lying in Polk township; for as already shown, the payment of the taxes in Polk township was co-extensive with the whole of No. 4023, lying in that township, and defeats the sale of the 284 acres in that township, on one of the express grounds provided in the act, as the reasons of annulling the sale. Perceiving no substantial error in the record,

The judgment is affirmed.