## Wilmoth *versus.* Canfield.

1. Three tracts had been assessed as one entire seated tract and the taxes paid by the owner, two were during the same time separately assessed as unseated and sold for taxes. The sale being void, *held*, the owner's possession of part extended to the whole body.

2. The purchaser at the tax sale entered and cultivated part of the tracts he purchased. *Held*, that his entry did not extend his possession beyond his *pedis possessio*, and the owner could maintain trespass against him for cutting timber outside of his cultivation.

3. Making a survey and cutting timber on another's land in his actual possession is not a constructive ouster.

4. O'Hara *v.* Richardson, 10 Wright 386, followed.

May 14th 1874.   Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Somerset county :* Of May Term 1874, No. 90.

This was an action of trespass *quare clausum fregit,* commenced January 8th 1872, by E. C. Thomas and Ira Canfield against Alfred Wilmoth.   The plaintiffs were trustees of the Southampton Association, the beneficial owners of the land.   Thomas, one of the plaintiffs, having died, his death was suggested on the record, and the case went to trial in the name of Canfield alone.

The case was tried September 16th 1873, before Hall, P. J.

The alleged trespass was committed on two tracts of land designated in the trial as the Douglass tract and the Hallowell tract. These tracts—the Douglass as containing 316 acres, the Hallowell as containing 283 acres—and a third, called the Redman tract, as containing 305 acres—were patented October 16th 1795 to John F. Mifflin ; he having died, his representatives, on the 29th of October 1834, conveyed them to E. L. Anderson.

The plaintiff gave evidence of payment by E. L. Anderson of the taxes on these tracts, separately as unseated, from 1842 to 1847 inclusive.   In 1848 they were sold to Ross Forward for non-payment of taxes and redeemed by Anderson.   In 1850–1851 Anderson paid the taxes ; in 1852–1853 Forward paid the taxes.   On the 3d of July 1853 Anderson sold to Forward.   On the 18th of July 1854 Forward conveyed to the Union Coal and Iron Company.   Forward paid the taxes from 1854 to 1857 inclusive. These tracts were sold by the sheriff to Jacob Trust, under a judgment against the Coal and Iron Company, and the deed made to Trust September 16th 1858.   On the 7th of June 1859 Trust made a bond of conveyance to Stabler and others, called the Southampton Association.   On the 11th of June 1860 the Douglass and Hallowell tracts were sold for taxes to Walker and Wilmoth, and redeemed by Trust June 2d 1862.   On the 3d of May 1864 Trust conveyed the Anderson tracts to the Southampton Association, who on the same day conveyed to the Somerset Iron and

Coal Company. Under a judgment against the Somerset Company, "a certain tract known as the Anderson land, containing 400 acres more or less," was sold by the sheriff to E. C. Thomas and I. C. Canfield, and the deed made November 15th 1866 to Thomas and Canfield, who made a written declaration of trust, which was recorded, that they held for the Southampton Association. From 1860 to 1870 inclusive, the Anderson tract, as containing 400 acres, was assessed as seated land in the name of the Southampton Association.

There was evidence from collectors, supervisors and others that the taxes on the Anderson lands had been paid by the agents of the Southampton Association for every year from 1860. Also that there were cultivated fields on the Redman and Douglass tracts. The entering on the Douglass and Hallowell tracts and cutting timber by the defendant, were admitted by him.

The defendant gave evidence that the Douglass tract and Hallowell tract had been assessed as unseated from 1862 to 1869, the Douglass as 216½ acres and the Hallowell as 133 acres, and that taxes for 1862–1863 had been paid on both tracts separately by the Southampton Association; that the Douglass tract had been sold for the taxes of 1864–1865 to J. M. Holderbaum, and treasurer's deed made to him August 28th 1866. The Hallowell tract had been sold for taxes to the commissioners for the same year, and treasurer's deed made to them August 28th 1866. On the 9th of June 1869 Holderbaum conveyed the Douglass tract to the defendant. On the 13th of September the commissioners conveyed the Hallowell tract to John D. Roddy, and 21st of September Roddy conveyed it to the defendant. Holderbaum and defendant paid taxes for the Douglass tract for the years from 1866 to 1871 inclusive.

Alfred Wilmoth, defendant, testified: "Right away, after I got deed from Holderbaum, I took possession of the Douglass tract, and cleared a field and put it in wheat that fall; have had two crops; got it put out on the shares; cut timber on it; had it cut under me; the company knew of my taking possession; Mr. Long (agent of the association) was along and saw the lines run; Thomas and Canfield were not along; Mr. Kneaream paid me for bark; some bark had been cut and was on the land, and after I took possession I notified Kneaream not to haul it away without paying me for it, and he paid me for it in the presence of Mr. Long, by his instructions; Long told Kneaream before me; there was also a corner that Reyhart had cut, and he paid me for it—$5—by Mr. Long's authority; this bark was cut on the Douglass tract, and Mr. Long knew that it was on that tract; I have cut on the tract, and wouldn't allow any one else to cut, except through me, ever since I bought it from Holderbaum; I took possession of the Hallowell tract right away after I got it from Mr. Roddy, and

[Wilmoth *v.* Canfield.]

went on to cut props on it, or get Close to cut them; I notified Long that I had bought that tract and was going to cut on it; I did not do anything in the way of taking possession, except ran the lines and cut the props, and I also paid the taxes; John Witt ran it once for me; he ran the Douglass twice; the first time he ran the Douglass was while Wellman was agent; then I got Mr. Colborn to run the Douglass; he sent Raudabaugh to run it for him; that was the time it was decided about the bark; I told Mr. Long if he would go to cut on Hallowell, I would put him through."

There was other evidence corroborating Wilmoth; also evidence by plaintiff in rebuttal, contradicting him.

The defendant's points were:—

1. If the jury believe that the defendant had the actual possession of the lands on which the alleged trespass was committed, under color of title, he cannot be treated as a trespasser, and the plaintiff cannot recover in this action, although he may have the superior legal title.

2. If the jury believe that the defendant took possession of the lands by causing them to be surveyed, the lines to be marked on the ground, cutting timber, clearing and cultivating the lands or any part thereof, and exercising acts of ownership, then he had such possession as will prevent him from being treated as a trespasser, and the plaintiff cannot recover.

The court charged:—

* * * " The plaintiff claims that he held these lands as the trustee for a company of persons known as the Southampton Association.

" This action can be maintained only by the person having the actual possession when the trespass was committed.

" This suit was instituted on the 1st of January 1872. It relates to any trespasses that are complained of in the declaration, committed on the plaintiff's actual possession within the period of six years before that date.

" The plaintiffs allege that they and those under whom they claim had paid taxes regularly on this land from 1842 up to this date. They showed by the records of the treasurer's office that E. L. Anderson paid the taxes for 1842, '43, '44, '45, '46 and '47." * * *

The court then recapitulated the chain of title by which each party claimed.

" Did the plaintiff have actual possession of the Douglass tract in 1869 and of the Hallowell tract in 1871? Did Wilmoth enter on that possession and cut the timber? What is the value of the timber cut and taken away? Did Wilmoth get title or right of possession by two deeds from Holderbaum in 1869, and Roddy in

[Wilmoth *v.* Canfield.]

1871, such as entitled him to enter upon the plaintiff's possession (if he had any) and cut the timber?

"[The plaintiff has attempted to show you by the supervisors and collectors of taxes that the taxes for 1864 and 1865 were paid in the township on the seated lists. This is a question of fact for you to determine from the evidence, which has been fully discussed to you by the counsel on each side. Were the taxes so paid? If they were, the sale by the treasurer was void and conveyed no title.] The measure of damages is the value of the timber cut by the defendant as it stood on the ground.

"The counsel on both sides have submitted points in writing, which have been read in your hearing. We have answered them substantially in the general charge. [If the plaintiff was in the actual possession of the whole body of lands, including these tracts, and paid the taxes regularly, and paid all the taxes of every kind assessed on these lands for 1864 and 1865 in the township, on the seated lists, then the sale by the treasurer was illegal and void and conveyed no title, and the defendant's entry and cutting of timber was a trespass for which the plaintiff ought to recover in damages the value of the timber as it stood before it was cut."]

The verdict was for the plaintiff for $190.

The defendant took a writ of error, and assigned for error the portions of the charge in brackets, and that the court did not affirm his points.

*A. H. Coffroth* (with whom was *A. J. Colborn*), for plaintiff in error.—Land does not become seated until one enters on it with the intention to improve it and derive profit from it: Ellis *v.* Hall, 10 Barr 296. Seating the Redman tract would not legalize the assessment of the other tracts on the seated list; they were not connected with any ownership so as to identify them: Lyman *v.* Philadelphia, 6 P. F. Smith 501.

*P. H. Gaither*, for defendant in error.—All the Anderson tracts were assessed as an entire seated tract, and the assessor could not, on the representation of a person in possession, claiming part of the land, give it the character of unseated land: Harper *v.* Farmers' & M. Bank, 7 W. & S. 204; Larimer *v.* McCall, 4 Id. 133; Milliken *v.* Benedict, 8 Barr 169.

Judgment was entered in the Supreme Court, May 18th 1874.

PER CURIAM.—The charge of the court as to the tax-title was so clearly right no comment is necessary. The payment of the taxes was a question of fact fairly left to the jury. The taxes being paid, for which the land was sold, the tax-title necessarily fell.

We have some hesitation as to the omission of the court to

[Wilmoth *v.* Canfield.]

charge on the defendant's second point. It would have been better had the court answered it specially, so as to define distinctly to the jury what constitutes possession and ouster. Still we are not able to say that the general charge was so wholly inadequate, as an answer to the point, as to require a reversal. The court distinctly, and more than once, told the jury that the plaintiff could not recover without actual possession of the land. Under this charge the verdict must have been for the defendant, if the jury found that the plaintiff was not in possession of the *locus in quo*. But the tax-title being void, if the plaintiff were in actual possession of his land, the law extended this possession presumptively throughout the whole. Hence the defendant could not by his entry extend his possession beyond his *pedis possessio*, unless by an actual disseisin. Consequently the defendant could not have had a constructive possession beyond that within his fields or cultivation. The actual possession of the plaintiff found by the jury necessarily covered all the rest of the land not included within the defendant's fields or cultivation. The making of a survey and the cutting of timber on another's land in his actual possession, afford no ground for a constructive ouster : O'Hara *v.* Richardson, 10 Wright 386. If the defendant did enter and clear land in this case, the actual possession of the plaintiff being found by the jury, we must presume that the jury found this actual possession to include the *locus in quo*.

Judgment affirmed.