# McCormick, et al., Trustees, *v.* Berkey, et. al., Appellants.

*Ejectment—Rule to bring ejectment—Issue to determine title—Underlying minerals—Seated lands—Possession—Title under tax sale—Act of June 10, 1893, P. L. 415.*

1. The Act of June 10, 1893, P. L. 415, confers jurisdiction upon the court to frame an issue to determine title to underlying minerals where the petition, accompanied by an abstract of title, avers, in addition to the other necessary jurisdictional facts, that a tract of land was conveyed to the petitioners "excepting and reserving, however, under the operation of this tract......192 acres 113 perches of the surface of the said tract of land" which had previously been conveyed to another; that the respondents claim title to the mineral and mining privileges under the 192 acres by virtue of a tax sale; that the petitioner and his predecessors had held title to the minerals and had continuous possession of them for more than twenty years: and the answer of the respondents avers that they held title to the minerals in controversy by virtue of a sale of such as unseated mineral lands made by the county treasurer for the nonpayment of taxes assessed thereon and that they had been in continued and uninterrupted possession of the said minerals since the said sale.

2. Where in such a case the lands in controversy are undeveloped and unimproved and not in the actual possession of any person, possession such as follows and is incident to the tax title is not sufficient to oust the jurisdiction of the court under the Act of 1893.

3. A conveyance which describes the tract conveyed as a single body of land, excepting and reserving surface rights in a part thereof, vests title in the grantee to the residue of the entire tract of surface and all the minerals underlying the whole tract, and where part of the tract so conveyed is seated it makes the residue of the entire tract seated.

*Taxation—Assessment—Mineral lands—Seated land—Tax sale—Title.*

4. It is the duty of tax officers to assess the entire adjacent real estate holdings of an owner, not severed or detached by his own act, as a single body, and they have no authority to divide them and assess them severally for the purposes of taxation. This rule applies where a tract of land has been assessed as a whole and part of the surface or minerals has been sold.

5. The owner of a tract of seated land conveyed a portion thereof, reserving to himself the minerals underlying the tract conveyed. The part conveyed was thereafter assessed for taxation as the property of the grantee and the residue was conveyed to another and continued to be assessed as seated land. Subsequently the minerals were assessed and taxed as unseated mineral lands and sold for such taxes. *Held,* that this assessment was without warrant of law and void and the tax sale thereunder passed no title.

Argued October 17, 1912. Appeal, No. 187, Oct. T., 1912, by defendants, from judgment of C. P. Somerset Co., Sept. T., 1907, No. 116, on verdict for plaintiffs in case of Henry B. McCormick and Vance C. McCormick, Trustees of the Estate of Henry McCormick, Deceased, v. John A. Berkey and John R. Boose. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Issue framed under the Act of June 10, 1893, P. L. 415, to determine title to minerals underlying tract of land in Quemahoning Township. Before HOLT, P. J., specially presiding.

The opinion of the Supreme Court states the case.

The jury found a verdict in favor of the plaintiffs for the real estate in dispute, upon which judgment was entered.

On a rule for a new trial and for judgment n. o. v., HOLT, P. J., filed the following opinion:

In this case an issue was framed between the plaintiffs and the defendants, to determine the right and title of the respective parties in and to a tract of mineral land in the Township of Quemahoning, in said county, bounded by lands of Jacob Lohr, and others, containing 192 acres and 118 perches strict measure.

On the 14th day of May, 1887, the Johnstown Lumber Company became the owners in fee simple of a certain tract or piece of land in said township, containing 245 acres and 134 perches; and the Johnstown Lumber Com-

pany, on the 25th day of April, 1889, being so seized of said tract of land, executed and delivered unto one John Holsopple a deed for 192 acres and 134 perches of the said tract of land, reserving the right of the grantors to all the minerals underlying the same, with the usual mining privileges. The Johnstown Lumber Company, by another deed, dated October 28, 1891, conveyed unto the Cambria Land Company, by metes and bounds, the whole of the said tract of land containing 245 acres and 134 perches, excepting and reserving, however, out of the operation of the grant, the 192 acres and 134 perches of the surface of said tract heretofore conveyed by the Johnstown Lumber Company to John Holsopple.

The Cambria Lumber Company's interest in the said tract of land containing 245 acres and 134 perches was seized by the sheriff and sold as the property of the said Cambria Lumber Company, on December 13, 1893, unto one M. Saxman, Jr., and others, who on January 30, 1894, conveyed the whole of the said tract containing 245 acres and 134 perches excepting the 192 acres and 13 perches of surface, to Henry McCormick, who, by his last will and testament, in writing, dated the 31st day of March, 1894, since his decease duly probated and remaining of record in the proper office at Harrisburg, in this State, devised all his interest in the said tract of land unto his legal heirs, who, by virtue of certain articles of agreement, constituted the plaintiffs in this proceeding trustees for them, of the land so devised to them by the said Henry McCormick, deceased.

The defendants claim the title to and the right of possession of the premises in dispute, under and by virtue of a deed to them, executed and delivered by the commissioners of Somerset County, dated the 28th day of December, 1904.

The interest conveyed by the county commissioners of Somerset County to the defendants was the same that was conveyed to them by Peter Dumbauld, Treasurer of Somerset County, by his deed dated September 24,

1900, the said mineral land having been sold by the treasurer as unseated lands, for the nonpayment of taxes which were duly assessed and levied on the said premises in the years 1898 and 1899, in the name of the Johnstown Lumber Company, one of the plaintiff's predecessors in title.

Upon the trial, the plaintiffs took the position that the mineral lands in question were part and parcel of the 245-acre tract conveyed to Henry McCormick by the Johnstown Lumber Company, the surface rights in 192 acres and 13 perches of which the Johnstown Lumber Company had conveyed to John Holsopple, and that during the years 1898 and 1899 the said tract was seated land, and as such assessed; and that all of the taxes thereon were paid by the plaintiffs; while the defendants contended that by the deed of the Johnstown Lumber Company to John Holsopple, the minerals underlying the 192 acres and 134 perches of surface were severed from the 53 acres, which was part of the 245-acre tract, and that when M. Saxman, Jr., and others conveyed to Henry McCormick, they conveyed two distinct tracts to him, namely, a tract of land containing 53 acres, both minerals and surface, and another tract of minerals containing 192 acres and 134 perches, underlying the John Holsopple surface holdings; and that by reason thereof the 53 acres, and the minerals underlying the 192 acres and 134 perches, were separate and distinct estates, for the purpose of assessment and the levying of taxes, and that the minerals underlying the 192 acres and 134 perches were unseated, and that the treasurer's sale passed a good title to the county commissioners.

From the evidence it appears that for a period of about eight years after the grant to John Holsopple, 192 acres of land were assessed to him, and that 53 acres of land were assessed to the plaintiffs or their predecessors in title, no separate assessment having been

placed upon the coal underlying either the Holsopple part, or the 53 acres of the said tract.

The coal became valuable, and in the year 1898 the assessor, without any notice to the McCormicks, assessed the 53 acres as seated land, and assessed the coal underlying the Holsopple tract as unseated, in the name of the Johnstown Lumber Company. The plaintiffs paid the taxes, as they had paid them prior to that year, without any knowledge or notice whatsoever that the assessor had assessed the coal underlying the Holsopple surface as unseated land.

From the time Henry McCormick purchased the said tract of land until long after the tax sale, it appears from the evidence that a tenant under the McCormicks lived upon their said tract of land, and farmed the surface of the 53 acres, and that at all times there was sufficient personal property upon the premises out of which the taxes could have been made.

The important question involved in this case is a legal one, and that is whether by the grant to John Holsopple there was a severance of the coal underlying the Holsopple surface, from the 53 acres, the surface rights of which were not affected by the said Holsopple conveyance. Upon the trial we took the position that it was for the court to interpret the effect of the Holsopple deed upon the remaining part of the land of the Johnstown Lumber Company. We instructed the jury that the Holsopple conveyance worked a severance of the minerals from the surface of the Holsopple tract, but that it did not work a severance of the minerals underlying the Holsopple surface from the 53 acres, part of the original 245-acre tract.

The conveyance not working a severance, were the minerals underlying the Holsopple tract unseated? We instructed the jury that the minerals underlying the Holsopple surface, and the 53 acres of surface and minerals, constituted but one single tract of land, and that if any part of the said tract was in fact seated land,

the whole tract was seated; and that for the purpose of taxation, part of the tract could not be assessed as seated land, and the other part as unseated land; and that the assessment and payment of taxes upon the tract, even though assessed only as 53 acres, would prevent a sale of the minerals, part of the same tract, for taxes, as unseated land when the plaintiffs had no notice or knowledge of separate assessments.

There was some question, upon the trial, as to whether or not there was sufficient personal property upon the premises, the surface of the 53 acres, to pay the taxes. This was a question for the jury.

The trial resulted in a verdict for the plaintiffs. The defendants have made a motion for judgment non obstante veredicto, upon the whole record, and for a new trial, assigning in support of the motion for a new trial several reasons which we will take up seriatim.

The first reason is that the court erred in admitting evidence by the plaintiffs to prove the assessment and payment of taxes upon lands other than the parcel in controversy. This exception has reference to the evidence admitted to prove assessment and payment of taxes on the 53 acres, part of the plaintiffs' entire tract of land. Upon the trial, we were satisfied that such evidence was competent, and we are not now convinced that there was any error in admitting such evidence. The first reason is, therefore, not sustained.

The second reason alleges error on the part of court in admitting evidence by the plaintiffs to prove that there was personal property on any other land than the property in controversy, upon which a levy might have been made to collect the amount of taxes upon the land in dispute. This reason raises the same question that is involved in the first reason, and from what we have already said in relation to the first reason, the second reason is not sustained.

The third reason alleges that the court erred in refusing the motion of the defendants to strike out all of the

testimony relating to the assessment or payment of taxes on any other property than the property in dispute; that it also erred in refusing to allow the defendants' motion to strike out all testimony relating to the location of the personal property upon the tract of land alleged to belong to the plaintiffs, other than the property in dispute. This reason raises the same question involved in the first and second reasons; it is, therefore, not sustained.

The fourth reason alleges that the court erred in its charge to the jury. It has not been pointed out wherein such alleged error exists; for this reason we do not consider the fourth assignment.

The fifth reason alleges error on the part of the court in refusing to affirm defendants' points which are marked as declined.

The defendants' second request, which was refused, is as follows: "If the jury find from the evidence that the assessors in making the assessment upon the 53-acre tract, did not intend and did not include the assessment of the minerals underlying the 192-acre tract, as a part of said assessment, then the payment of the taxes, or the location of the personal property upon the 53-acre tract, could not have the effect of drawing to it the mineral underlying the 192-acre tract, for the purpose of making it a part of the former tract." To have affirmed this point would have been to practically direct a verdict for the defendants, if the jury should find that there was no intention on the part of the assessor to assess the minerals underlying the Holsopple surface. We are not convinced that there was any error in refusing the request.

The request of the defendant marked "2-A," which was refused, is as follows: "If the jury find from the evidence that the surface and mineral for the entire fee of the 53-acre tract was owned by the same person or persons, then the same could be assessed only as so many acres of land, and such assessment, by operation

of law, effected a severance of the 192 acres of mineral therefrom, for the purposes of taxation." Upon the trial we were not satisfied that any act of the assessor could by operation of law work a severance of any part of the estate from the other part thereof, without notice to or the consent of the owner; and we do not now see any reason for changing the views which we then held.

The third request of defendants for instruction, which was refused, is as follows: "If the jury find from the evidence that Edward Zimmerman (tenant under the McCormicks), when he entered upon and took possession of the 53-acre tract of land, had the full extent of his possession set out and designed by lines marked on the ground, or by the boundary lines mentioned in the deed to John Holsopple, by which the latter's land became severed from the land occupied by the former, so that the said boundary line between the two tracts could be known and ascertained with certainty, and confined himself accordingly to the 53 acres within said boundary, his possession cannot be taken or deemed to extend beyond his lines, so as to give the character of seated land to that which lies without." This request was refused and not read to the jury.

The mere fact that there may have been a conveyance separating the surface rights of John Holsopple under his deed from the surface of the part of the said tract containing 53 acres, would be of no controlling effect, and would not work a severance of the 53 acres from the minerals underlying the Holsopple surface rights. We are not satisfied that there was any error in declining this point.

The fourth request of defendants, which was refused, reads as follows: "After the severance of the surface of the John Holsopple tract from the underlying mineral strata, by reservation of the same in his deed, the said mineral right became an independent interest in land, which formed a distinct possession; it was held upon a distinct title, and was as much the subject of

separate taxation as the surface, and being undeveloped and having no improvements thereon, it was the duty of the assessor to return it as unseated mineral land." From what we have already said concerning the instructions to the jury in the general charge, as to the effect of the Holsopple conveyance, we think the refusal of this request was proper; an affirmance of it would have taken the case from the jury.

The defendant's fifth request, the refusal of which is alleged as error, is as follows: "After the plaintiffs, or their predecessors in title, conveyed the surface of the John Holsopple tract to the said John Holsopple, and reserved the minerals underlying the same, it became their duty to notify the county commissioners of this fact; and if they failed to do so, and thereby the minerals were assessed as unseated lands, and sold as such at a tax sale, the owners can not complain that the said mineral lands were placed upon the unseated list and sold as such for the nonpayment of taxes thereon." Inasmuch as there was no severance of the minerals underlying the Holsopple surface from the remainder of plaintiffs' tract of land, we think there was no obligation resting upon the plaintiffs or their predecessors in title to give notice of the conveyance to John Holsopple. When John Holsopple purchased, it was his duty for his own protection, to give notice to the county commissioners or the assessor of the fact of his purchase. We think there was no error in refusing this point.

The sixth request of the defendants, the refusal of which is alleged as error, reads as follows: "If the jury find from the evidence that the property in dispute was on the seated list, as a part of the 245-acre tract, in 1889, and after the severance of the surface overlying the same, to wit: from 1889 to 1898, the said minerals were not assessed at all, either as seated or unseated, and escaped taxation altogether, and in the year 1898, the year of the triennial assessment, it was assessed and

returned by the assessor as unseated, and charged with the taxes for that year and the next, 1898 and 1899, on the unseated list, it became an original assessment of land, which was on no list, and it was not a case of notice to the owners, for they could not complain that they were deceived in finding it on the unseated list, for it was on no other." From what we have already said, we do not think that the refusal of this point was an error.

The eighth point for charge presented by the defendants, which was refused, is as follows: "If the jury find from the evidence that the property in controversy consists of a tract of undeveloped and unimproved mineral land, the surface overlying not being owned by the plaintiffs, you will then find that the same was in fact unseated land, and was properly assessed and returned as such by the township assessor; and his valuation and return thereof, in connection with the minutes of the county commissioners showing the rate of taxes levied thereon, followed by a certification thereof to the county treasurer, is a sufficient assessment to support a tax sale by him, after the taxes were due and remained unpaid for one whole year." This point was refused for the reason that to have affirmed it would have been equivalent to instructing the jury that the coal underlying the Holsopple surface was severed from the other part of the plaintiffs' tract and would have amounted to binding instructions, practically, for the defendants.

The ninth request for instruction presented by the defendants, and which was refused, reads as follows: "Even if the jury should find that the plaintiffs were the owners of an adjoining tract of land occupied by one Zimmerman, which adjoining tract of land was seated, or upon which the plaintiffs paid taxes, the mineral land involved in this suit cannot be considered as a part thereof, or as one tract, for the purpose of taxation, so that the seating of the former or the payment of taxes

thereon did not prevent a sale of the latter as unseated."
To have affirmed this point would have permitted the
jury to interpret the legal effect of the Holsopple deed
upon the remaining part of the 245-acre tract. In the
trial we felt that it was the duty of the court to con-
strue the conveyance as to its effect, so far as the min-
erals were concerned. To have affirmed the point would
in our opinion have been error. The fifth reason in
support of the motion for a new trial is, therefore, not
sustained.

The sixth reason is to the effect that the verdict is
against the law of the case. We are not satisfied that
there is any merit in this reason.

The seventh reason charges that the verdict is against
the evidence. An examination of the record will dis-
close that this reason is also without merit.

This case in some respects presents a novel question.
It is needless to cite authorities to sustain the position
that where the surface of an entire tract of land is owned
by one person, and the minerals by another, there are
two separate and distinct estates; and each liable to
assessment separately for the purposes of taxation. In
the case under consideration, it is clear that the deed
from the Johnstown Lumber Company to John Hol-
sopple worked a severance of the minerals laterally,
and of the surface rights in the Holsopple tract perpen-
dicularly, from the surface of the remaining part of the
245-acre tract; but the important question is, was there
a severance perpendicularly of the minerals underlying
the Holsopple surface, from the remaining part of the
245-acre tract? If not, was so much of the minerals as
underlie the Holsopple surface unseated for the purposes
of taxation? No case has been cited by counsel on either
side, nor have we been able to find any, decisive of either
of these questions. Counsel for defendants have cited
the case of Logan v. Washington County, 29 Pa. 373,
and maintain that it controls the case now under con-
sideration. In that case, it appeared that Logan owned

10 acres of land in Union Township in Washington County, and also owned the coal under an adjoining tract of 75 acres, which was assessed to him separately from the 10 acres, upon a separate return made by the assessor. We understand that in that case the 10-acre piece was a separate tract of land, held by Logan under a different conveyance from that under which he took and held the coal underlying the adjoining tract. However, the mineral was not assessed as unseated. The owner had notice of the assessment, and the question before the court for consideration on the case stated was whether or not the coal underlying the surface of the 75 acres could be assessed separately from the overlying surface. The court held that the assessment of the mineral under the adjoining 75 acres separately from the surface thereof was proper.

In the case at bar, in all of the conveyances following the deed to John Holsopple, the tract was described as an entire tract of 245 acres, excepting and reserving the said surface rights of John Holsopple in the 192 acres. There being no severance made by any conveyance, the law would not work a severance for the purposes of taxation. At least, there would be no such severance as to make the minerals underlying the Holsopple tract unseated; for they remained and continued to be part and parcel of one entire tract or body of land. In the case of Logan v. Washington County, the assessment was with notice to the owner. In the case under consideration there was no notice to the owners, and the assessment was made in the name of one of the predecessors in title to the plaintiffs. We are not satisfied that the case cited supports the contention of the defendants.

Counsel for the defendants upon the trial asked how the minerals underlying the Holsopple tract could be assessed at all, unless assessed separately from the 53-acre part of the tract. We see no difficulty in the way of making an assessment of the minerals and the 53-acre

part of the tract together, in one body. In fixing the basis for an assessment, it is usual, and not improper, for the assessor to place a separate valuation on the buildings on a lot or a piece of land and a separate valuation on the land or soil itself, and to add the two valuations together, so as to make one entire valuation, as the basis of an assessment upon the particular property as a whole. Following the same practice, the 245-acre tract of land could be itemized as 53 acres of surface and 245 acres of minerals; so much on the surface, and so much on the minerals; and adding the two amounts together, as the basis for the assessment of the whole property.

Upon an examination of the whole record, we do not feel satisfied that we should sustain any of the positions taken by counsel in the motion for a new trial. Having reached this conclusion, the motion for judgment non obstante veredicto, as well as the motion for a new trial, should be overruled.

*Error assigned,* among others, was (17) in refusing to enter judgment in favor of defendants non obstante veredicto.

*Norman T. Boose,* with him *J. A. Berkey, C. L. Shaver* and *A. G. Holbert,* for appellants.—The plaintiffs not being in actual possession of the mineral land in controversy and the defendants claiming under a tax title, it is submitted that this proceeding to determine title thereto under the Act of June 10, 1893, P. L. 415, cannot be sustained: Dull v. Ahls, 14 Pa. C. C. R. 350; Hilborn v. Wilson, 17 Pa. C. C. R. 346; Delaware & Hudson Canal Co. v. Genet, 169 Pa. 343; Ullom v. Hughes, 204 Pa. 305.

The conveyance of part of a tract of land, with a reservation of the minerals thereunder, severs both surface and minerals from the residue for the purpose of taxation.

*Ernest O. Kooser,* with him *Edmund E. Kiernan,* for appellees.—The Act of June 10, 1893, is remedial in its nature and to be liberally construed, and the appellees' petition was under the verbatim terms of the act, asserting right title and right of possession and asserting defendants' denial of right of possession and title: Ullom v. Hughes, 204 Pa. 305; Smith v. Hibbs, 213 Pa. 202; Fearl v. Johnstown, 216 Pa. 205.

The seating of part of a tract of land renders the whole tract seated to its furthest boundary: Sheaffer v. McKabe, 2 Watts 421; Fish v. Brown, 5 Watts, 441; Ellis v. Hall, 19 Pa. 292; Jackson v. Sassaman, 29 Pa. 106; Altemose v. Hufsmith, 45 Pa. 121.

The assessing officer must assess lands in entire or single tracts according to their ownership and has no right to make divisions or partitions that are not made by the owner: Reading v. Finney, 73 Pa. 467; Brown v. Hays, 66 Pa. 229; Williston v. Colkett, 9 Pa. 38; Wilmoth v. Canfield, 76 Pa. 150.


OPINION BY MR. JUSTICE MESTREZAT, January 6, 1913:

This was a proceeding instituted under the Act of June 10, 1893, P. L. 415, for the purpose of determining the rights and title of the plaintiffs and defendants to the minerals underlying 192 acres and 113 perches of land in Quemahoning Township, Somerset County. Notwithstanding the numerous assignments of error there are but two questions for consideration here and both were properly disposed of in the court below. The exhaustive opinion refusing judgment non obstante veredicto dealing with the facts and law of the case filed by the learned trial judge renders an extended discussion unnecessary on this appeal. The appellants contend (a) that the court had no jurisdiction to frame an issue under the Act of 1893, and (b) that the conveyance of a part of the tract of land, with a reservation of the minerals thereunder, severed both surface and minerals from the residue for the purpose of taxation.

The other questions raised in the court below dealt with matters of fact and were properly submitted under the evidence. They need not be considered here.

The pleadings in the case conferred jurisdiction on the court to frame an issue under the Act of 1893. The amended petition, accompanied by an abstract of title made part thereof, averred, in addition to the other necessary jurisdictional facts, that the 245 acres of land were conveyed to Henry McCormick's predecessors in title and subsequently to him, "excepting and reserving, however, under the operation of this grant of the tract of land above described 192 acres, 113 perches of the surface of said tract of land" which had previously been conveyed to one Holsopple; that the respondents claim title to the minerals and mining privileges under the 192 acres and 113 perches of surface with mining privileges by virtue of a tax sale made in 1900; that McCormick and his predecessors had held the title to said minerals and had continuous possession of them for more than twenty years prior to the institution of these proceedings. The answer of the respondents averred that they held title to the minerals in controversy by virtue of a sale of such as unseated mineral lands made by the treasurer of Somerset County for the nonpayment of taxes assessed thereon, and that they were now and since they acquired title in 1904 had been in continued and uninterrupted possession of said minerals.

The petition discloses a prima facie title in the petitioners to the minerals in dispute. They are and were undeveloped and unimproved, and were not in the actual possession of any person. They were, as appears by the answer, assessed and sold as unseated lands. The only possession the respondents could have would be such as followed and were incident to the tax title which they acquired. This is not sufficient, however, under the averments of the petition, to give them a possession which will oust the jurisdiction of the court under

the Act of 1893. It will be observed, as appears by the petition and abstract of title, that in all the conveyances subsequent to the Holsopple deed, the tract conveyed was described as a single body of land of 245 acres excepting and reserving the surface rights in 192 acres conveyed to Holsopple. This vested title in McCormick to the residue of the entire tract which was about 53 acres of surface and all the minerals underlying the whole tract of 245 acres. These lands were a single body. It is true they were composed of both surface and mineral lands, but they were all one compact body of land or real estate belonging to a single owner. While the surface of 192 acres was severed from the underlying minerals by the Holsopple deed, those minerals were not severed from the entire tract of 245 acres conveyed to McCormick by the Johnstown Lumber Company. It is not claimed that the 53-acre tract, in possession of McCormick and his trustees, was unseated, and hence being seated prima facie it made the residue of the entire tract conveyed to and held by him seated. We think the pleadings show a prima facie title to the minerals in dispute in the petitioners which casts the possession on them, and the answer denying both title and right of possession, the case is within the Act of 1893, and the court was right in assuming jurisdiction.

The appellants further contend that the conveyance of the 192 acres to Holsopple with the reservation of the minerals thereunder severed both surface and minerals from the residue of the entire tract for the purpose of taxation. Many of the requests for instruction presented to the court below are predicated upon the correctness of this proposition. They were all disposed of by the learned trial judge in holding that the deed to Holsopple severed the surface of the 192 acres from the minerals, but that it did not sever the minerals thereunder from the residue of the whole tract. On this point the learned judge said in his charge, which is

the subject of the second assignment of error, "that this deed did not work a severance of the minerals underlying the part of the surface sold to John Holsopple, from the other part of the 245-acre tract, and that when the Johnstown Lumber Company conveyed to Henry McCormick it conveyed to him one entire estate, containing 245 acres, subject to the surface rights in the 192 acres which had been conveyed to John Holsopple and the privileges in the coal underlying the same surface." For the purposes of taxation, this ruling was entirely correct. The entire tract of 245 acres, prior to the Holsopple conveyance, was seated land, was assessed, and taxes were paid thereon. After the conveyance, Holsopple paid taxes on the surface he had purchased, and the residue of the larger tract was assessed and taxes paid thereon by the owners. It is true that it was assessed as 53 acres, but the number of acres was only descriptive for the purpose of identifying the tract, and the seating of that part of the residue made it all one seated tract of land. It was the whole of the residue of the tract regardless of the number of acres, and not 53 acres of land, that was included in the assessment for the purposes of taxation. It was the residue of the tract after deducting the surface rights in Holsopple that the taxing officers assessed, and on which McCormick and his predecessors in title paid taxes. If instead of selling the 192 acres of the surface to Holsopple the owner had sold 192 acres of the coal under the same surface it certainly goes without saying that the surface of the 245 acres and the remaining 53 acres of coal would have been assessed not separately but as one body of land. It is the duty of taxing officers to assess the entire adjacent real estate holdings of the owner, not severed or detached by his own act, as a single body, and they have no authority to divide them and assess them severally for the purposes of taxation: Brown v. Hays, 66 Pa. 229; Wilmoth v. Canfield, 76 Pa. 150; Scranton v. Gilbert, 16 W. N. C. 28. This rule applies

where a tract of land has been assessed as a whole and part of the surface or minerals has been sold. The residue in the hands of the grantor or his grantee is one body or tract of land and should be assessed as such for the purposes of taxation. It is true that the owner of land may, by proper conveyance to another, sever the minerals from the surface and that each will thereafter constitute a separate and distinct estate taxable as such. That is not the proposition confronting us in this case. Here, we do not have the owner of a tract of land selling either the entire surface or the entire mineral strata, but the owner selling the entire tract and reserving a part of the surface. What was reserved or not sold by the grantor was severed from the residue of the tract, but the whole of the residue, surface as well as mineral, continued to be a single body of real estate, the title to which was vested by a single conveyance in a subsequent owner. Under the settled rule, therefore, it was the duty of the taxing officers to assess the surface and the minerals together as an entire body of real estate belonging to the owner. There was no authority in law for separating the minerals from the surface and assessing them separately. The assessment of the 53-acre tract was the assessment of the surface and all the minerals, and the taxes paid under such assessment were the taxes on the whole body of land.

It follows from what has been said that the act of the assessor in assessing the 192 acres of minerals as unseated land was wholly without warrant of law and void. The tax sale, therefore, passed no title to the grantors of the defendants, and the latter have no right to the possession of the minerals in dispute.

The judgment is affirmed.