# Mary W. Moreland, Laura Moreland, Mentrose W. Moreland, Minnie Moreland, Lena Moreland, Nannie Moreland and John H. Moreland, Appellants, *v.* H. C. Frick Company.

*Adverse possession—Coal lands—Mines and mining—Separation of mineral from surface.*

The title to the surface of land, either by deed or by adverse possession, carries with it the right to the coal beneath, but this may be rebutted by evidence of a severance of the coal, and such evidence is not contradictory of that which shows title by deed or by adverse possession of the surface.

When a severance takes place, and the holder of a stratum of coal or other mineral records his title, or enters into possession of his sub-surface estate, he is not affected by an adjudication of the title to, or possession of the surface.

A and B, brothers, inherited land from their father, of which they made parol partition. A died, leaving B as his heir at law. B's son John claimed title to A's land by parol gift and adverse possession. B conveyed the coal to C, whose title defendants by sundry conveyances obtained. The testimony showed that John was present when the conveyance was

made by B to C, and that he did not object; but, on the contrary, he shared in the proceeds and saw the coal mined until his death, a period of seventeen years, without protesting against it. In a suit by his heirs against defendant for damages for mining and carrying away the coal, it was *held,* (1) that the evidence of John's adverse possession of the surface in no way contradicted the evidence of his acquiescence in the sale of the coal; (2) that it was not evidence of his adverse and hostile possession of the coal; (3) that his acquiescence in the sale of the coal estopped him and his heirs from denying the sale.

Argued May 13, 1895.   Appeal, No. 136, July T., 1894, by plaintiffs, from judgment of C. P. Fayette Co., June T., 1892, No. 382, on verdict for defendant.   Before Sterrett, C. J., Green, McCollum, Mitchell and Dean, JJ.   Affirmed.

Trespass to recover the value of coal alleged to have been wrongfully mined and removed from the lands of the plaintiffs.

The material facts are fully stated in the opinion of the Supreme Court.

When John Wiltrout was on the stand he was asked this question by plaintiffs' counsel:

Q. "Did you ever hear him (John H. Moreland) say how he claimed to own the farm?"

Mr. Playford: "Don't answer that; we object."

The Court: "Well, that has been passed upon already."

Mr. Boyd: "I don't recall it, your Honor."

The Court: "I don't think that the declaration is admissible."

Mr. Boyd: "Your Honor will sustain the objection?"

The Court: "Well, that is my impression.   If you wish to be heard, I will hear you; I will sustain the objection if you do not want to be heard.   Objection sustained, bill sealed." [1]

When J. M. Dushane was on the stand he was asked this question by plaintiffs' counsel:

Q. "I will ask you if, during the lifetime of Alexander Moreland, you had any conversation with David Moreland about the ownership of this land?"

Mr. Playford: "Don't answer; that is not rebuttal, and it is not competent, if it was."

The Court: "It is not rebuttal to begin with."

Mr. Boyd: "What does your Honor say?"

The Court: "How is it rebuttal, to begin with?"

Mr. Boyd: "It rebuts the testimony that appears in the deed

of David Moreland to Daniel R. Davidson; they claim through David Moreland. We propose to prove by this witness that, prior to the time—they only have David Moreland's title, if they have any—we propose to show by this witness that prior to the time that they got that title, the declarations of John H. Moreland, the declarations of David Moreland against his interest, that John H. Moreland, the party through whom we claim here was the owner of the land, the land under the surface of which is the coal in dispute."

Mr. Playford: "I object; but I have already objected."

The Court: "Objection is sustained and bill sealed."

Q. "I will ask the witness if prior to 1864 David Moreland ever told him that John was the owner of the 131 acres, and how he got title?"

Mr. Playford: "Don't answer; I object."

The Court: "Yes, that is the same question; same ruling."

Mr. Boyd: "Give us an exception?"

The Court: "Yes, sir." [2]

The court charged as follows:

"I instruct you that, under all the evidence in this case, your verdict must be for the defendant." [3]

Verdict and judgment for defendant. Plaintiffs appealed.

*Errors assigned* were (1, 2) rulings on evidence, quoting the bill of exceptions; (3) charge of court as above, quoting it.

*S. E. Ewing* and *R. E. Umbel* of *Boyd & Umbel*, *J. C. Work* with them, for appellants.—The case should have gone to the jury on the ownership of the coal: Moreland v. Moreland, 121 Pa. 573; Campbell v. Braden, 96 Pa. 388; Ewing v. Ewing, 96 Pa. 381.

*Willis F. McCook*, *W. H. Playford* with him, for appellee, cited, on the question of parol gift: Washabaugh v. Entrekin, 36 Pa. 513; Blakeslee v. Blakeslee, 22 Pa. 237; Eckert v. Eckert, 3 P. & W. 332; Christy v. Barnhart, 14 Pa. 260; Myers v. Byerly, 45 Pa. 368; Postlethwait v. Frease, 31 Pa. 472; Harris v. Richey, 56 Pa. 395; cited on the question of adverse possession: Martin v. Jackson, 27 Pa. 504; Cadwalader v. App, 81 Pa. 194; Poorman v. Kilgore, 26 Pa. 365; Caldwell v. Copeland, 37 Pa. 427.

OPINION BY MR. JUSTICE DEAN, July 18, 1895:

This suit was brought to recover from defendant damages for mining and removing a large quantity of coal, which plaintiffs claimed belonged to them because it was under their land. Originally, the tract of which this was a part contained 300 acres, and was owned by Isaiah Moreland, who, having died intestate, the land descended to his two sons, David and Alexander Moreland, as tenants in common. Without a defined partition of record, the sons, by mutual consent, seem to have occupied the land in severalty; David, who was married, living on one end of the tract, and Alexander, who was single, living on the other end. The respective parts were known in the neighborhood as David Moreland's farm and Alexander Moreland's farm. The division line was a rail fence, which usually seems to have been considered by the brothers as defining the boundary of their respective possessions; though apparently, as brothers might do, they did not rigorously adhere to this division, for one or the other, at times, passed over the line in the use of the property. August 11, 1862, Alexander died intestate, leaving his brother David his sole heir at law; on June 22, 1864, David and his wife conveyed by deed the coal under the whole tract to Daniel R. Davidson, which deed was duly recorded November 22, 1864. By deed dated August 7, 1864, duly executed and recorded, Davidson conveyed the same coal to Henry Blackstone; and he the next day conveyed to the Connellsville Gas Coal Company, from which company it passed by sundry conveyances to the H. C. Frick Coke Company, this defendant. So far as shown by the record, the defendant was entitled to the coal and plaintiffs had no claim to it; but plaintiffs showed that in 1856 John, son of David, married, and with his wife took up their residence with the uncle Alexander on his end of the farm. John managed his uncle's farm, and continued to live in the house until his uncle's death in 1862, a period of about six years, and the farm, after he took up his residence thereon, was known as John's farm; John, at his uncle's death, alleged he had given him the farm in consideration of support during his, the uncle's life; as to this claim, so far as concerned the surface, his title does not seem to have been denied during the lifetime of his father, David, who died in 1877, about fifteen years after his brother Alexander; John,

in the meantime, cultivating and using the surface of the land
as his own; he died in 1881, in possession; after his death, his
brother William, claiming that the whole tract belonged to their
father, David Moreland, instituted proceedings in partition
against the widow and heirs of John, who defended against the
partition of the part on which John had resided and died, on
the ground, first, that it was a parol gift from his uncle Alex-
ander to him, and second, adverse possession for a period of
more than twenty-one years.   After trial before a jury, verdict
and judgment were in favor of John's widow and children.
William appealed to this court, and the judgment was affirmed:
See Moreland v. Moreland, 121 Pa. 573.   This judgment, as
between the parties, conclusively established John's widow's
and children's right to the surface of the one hundred and thirty-
one acres, which had belonged to Alexander Moreland in his
lifetime.   But the question settled in that case was determined
by evidence relating to the surface alone; the title to the sur-
face, either by deed or under the statute of limitations, carries
with it the right to the coal beneath, but this may be rebutted
by evidence of a severance of the coal, and such evidence is
not contradictory of that which shows title by deed or adverse
possession of the surface.   The question on which that case
turned is clearly shown in the opinion delivered by the present
chief justice, who, as preliminary to a consideration of the suf-
ficiency of the evidence, says: " The main ground of the de-
fense, and the one on which the case was finally submitted to
the jury, was, that John H. Moreland and his widow and chil-
dren had continuous, adverse, exclusive and notorious posses-
sion of the land, for more than twenty-one years."

   Besides the parties in interest, there were the children of
David, who claimed under their father, and John's widow and
children, who claimed under their uncle Alexander; a contro-
versy in partition between them could not affect the title of a
purchaser for value to the coal beneath.   Therefore, the judg-
ment in that case is not even persuasive evidence in this.

   Soon after the final judgment in the former case, the widow
and heirs of John brought this action of trespass against defend-
ant for mining the coal under the tract, the surface of which,
by that judgment, was determined to be theirs.   The evidence
on part of plaintiffs was not essentially different from that

offered by them as defendants in the first case, but the evidence offered by this defendant, as purchaser of the coal, while not affecting plaintiffs' surface right, in the opinion of the court was fatal to their claim for the coal, and accordingly, after hearing all the evidence, it directed a verdict for defendant.   We now have this appeal by plaintiffs, assigning three errors,—two to the rejection of testimony offered by plaintiff, and one to the peremptory direction to the jury to find for defendant.

We will treat the assignments as one, because if plaintiffs' evidence was not sufficient to warrant a verdict in their favor without the rejected testimony, it would not have been sufficient with it; that rejected, was of precisely the same character as that admitted; we must assume from the other testimony that John H. Moreland claimed the land in his lifetime, and that his father did not deny his claim.   So the only question for us is, was there sufficient testimony to warrant a verdict for plaintiffs ?   If there was, the court ought to have submitted it to the jury.   In answer to plaintiffs' evidence of gift and hostile possession, defendant showed that in June, 1864, when David Moreland executed the deed to Davidson for the coal under the whole tract, John Moreland was present at the negotiation, and made no objections thereto ; the house which John put up on his end was paid for by the father out of the proceeds of the sale of the coal; after the sale of the coal, the surface was assessed separately to the two Morelands for taxes, and the coal to the coal company, to whom Davidson conveyed it ; a statement of John to one witness that they contemplated a sale of the coal ; testimony of another witness as to conversation between John and his father about having sold the coal too cheap ; of three witnesses, that they said they had sold the coal, and were building two houses, one for John and one for the father out of the money ; the testimony of a miner who put down the shaft to work the coal as to John's inquiries whether the mining would affect the surface.   Then the significant fact, that although John lived about seventeen years after the sale of the coal, and after the deed was of public record, and while the coal was being mined, yet there is no evidence that he ever protested against defendant's assertion of right, or made demand for compensation.

When a severance takes place, and the holder of a stratum of coal or other mineral records his title or enters into possession of his sub-surface estate, he is not affected by the state of the title to or possession of the surface : Plummer v. Iron Co., 160 Pa. 483 ; Algonquin Coal Co. v. Coal & Iron Co., 162 Pa. 114.

It seems to us, in view of this evidence, no matter how strong may have been the evidence as to John's adverse possession of the surface, it in no way contradicts this positive evidence of defendant, that he acquiesced in the severance of the coal by his father's conveyance of it, shared in the proceeds, and never pretended to assert claim to it during his life.  So far as the record showed to the purchaser, at the date of the deed the title to the coal was in the father ; the right to dig it then passed to the purchaser, who afterwards, and for years, exercised that right under that claim, without objection ; clearly, there was nothing in the evidence to show adverse and hostile possession of the coal in John, when he so long acquiesced.

It is not material, in view of John's conduct at the date of the sale by his father, and subsequently until his death, whether the land was a gift from his uncle, or whether his claim thereto became a perfect title under the statute ; if a gift, which is doubtful, he was estopped from denying the right of the purchaser ; if his by hostile adverse possession of the surface, he showed no such possession of the coal ; on the contrary, his whole conduct was significant of a disclaimer to such possession.

Under the evidence the court would not have permitted a verdict for plaintiffs to stand, therefore there was no error in directing one for defendant.

The judgment is affirmed.