# Frick Coke Company, Appellant, *v.* Laughead.    Hustead, Appellant, *v.* Laughead.

*Deed—Orphans' court sale—Heirs—Title.*

Where a purchaser at an orphans' court sale pays part of the purchase money, and after the sale is confirmed to him enters into possession, and so continues until his death three years thereafter without having received a deed, and after he dies leaving a widow and minor children to survive him his administrators pay the balance of the purchase money out of his estate and take a deed to themselves " for the use of the heirs " of the purchaser, the title of the purchaser relates back to the confirmation by the court, and he, and not his heirs, is the first purchaser from whom title is derived.

Argued May 12, 1902.    Appeals, Nos. 271 and 272, Jan. T., 1901, by plaintiffs, from judgment of C. P. Fayette Co., March T., 1901, Nos. 27 and 28, for defendant non obstante veredicto, in case of H. C. Frick Coke Co. v. Walter H. Laughead and Daniel Sturgeon, and James W. Hustead against same defendant.    Before McCollum, C. J., Mitchell, Dean, Fell and Brown, JJ.    Affirmed.

Ejectment for land in George township.    Before Weand, J., specially presiding.

Rule for judgment non obstante veredicto.    See Sturgeon v. Hustead, 196 Pa. 148.

Weand, J., filed the following opinion :

In 1812 the orphans' court of Fayette county, on petition of the administrator of the estate of Rev. David Smith, deceased, granted an order of sale for the payment of the decedent's debts and for the support and education of his minor children.

The sale took place December 16, 1812, and the land was struck off to Joshua Davis for $1,260.92, who paid part of the purchase money.    The sale was confirmed by the court April 13, 1813, and Joshua Davis, the purchaser, at once entered into possession and resided on the land until his death, on February 20, 1816, without having received a deed in his lifetime. He left surviving him a widow, Catharine, and two infant

daughters, Kezia, then aged four years, and Sarah, then aged one year, both the issue of said Catharine by said Joshua.

Letters of administration on the estate of said Joshua Davis were duly issued to the widow, Catharine Davis, and to Phineas Sturgis and David Davis, to whom, on January 21, 1817, the administrator of Rev. David Smith, deceased, delivered his deed for the land previously sold to Joshua Davis, being part of the land now in dispute.

The balance of purchase money due was paid out of the personal estate of said Joshua Davis. The grantees named in the deed are, " Catharine Davis, Phineas Sturgis and David Davis, administrators of the estate of Joshua Davis, for the use of the heirs of the said Joshua Davis, deceased." The widow of Joshua Davis, with her two children, continued in possession of the land for many years.

Kezia Davis died May 14, 1833, intestate, unmarried and without issue. Her sister, Sarah Davis, on February 11, 1840, married Isaiah Custer, and on May 27, 1841, a child was born to them, named James Davis Custer.

Sarah Davis Custer died June 2, 1841, intestate, leaving surviving her husband, Isaiah Custer, and her infant son, James Davis Custer. The child, James Davis Custer, died on or about August 18, 1841, intestate, leaving surviving his father, Isaiah Custer, and his grandmother, Catharine Davis. Isaiah Custer died November 15, 1890, and Catharine Davis died April 5, 1872.

The plaintiffs claim title through Kezia and Sarah Davis as the perquisitors of title ; the defendants claim through Joshua Davis as the perquisitor of title, and the solution of the question as to which title shall prevail resolves itself into the inquiry as to what title passed to Joshua Davis by the administrators' deed.

If the deed vested the legal title in Joshua Davis or his estate, it is conceded that defendants' title is good ; but if the daughters, Kezia and Sarah, were purchasers of the title, and did not take by descent from their father, then the plaintiffs' title will prevail.

Joshua Davis was the purchaser at the orphans' court sale, and was so returned. He paid part of the purchase money in his lifetime, and the sale to him was confirmed by the court.

He entered into possession and continued in possession as owner until his death, a period of nearly three years, when he died without receiving a deed. His administrators paid the balance due with the money of the estate and received a deed to themselves "for the use of the heirs of Joshua Davis." In their account the administrators took credit for the payment so made.

The contention of the plaintiffs is that while Joshua Davis died seized of an equitable title in 1816, by virtue of the orphans' court sale to him, yet that he never acquired the full legal title; that the full legal title was conveyed in 1817 to his administrators in trust for his heirs; that his heirs were said Kezia and Sarah Davis; that said Kezia and Sarah Davis were the perquisitors of the title, being the persons who first brought the legal title into the family.

In support of plaintiffs' position cases are cited which draw distinction between orphan's court sales and sales on articles inter vivos.

Conceding the general principle that the interests of the heirs of a decedent whose land is sold for the payment of debts will not be divested until the delivery of a deed, we cannot see how it applies to this case. The rule must be applied to meet the circumstances of each particular case. An interest in land may be divested and acquired by other means than a deed. If a sale is made, money paid and received by the grantor, and the purchaser goes into possession by consent, his title will be good against his grantor's interest without deed. It is clear that a written instrument is not necessary: 26 Am. & Eng. Ency. of Law (1st ed.), p. 45.

An examination of the Pennsylvania cases cited by plaintiffs on this point will show that the point decided was that as against the heirs of the person whose land was sold the title was not complete until the delivery of the deed, but subject to be divested. But if the purchaser enters into possession and the consideration money is received by the administrator who makes the sale, and the estate distributed, and no claim against the purchaser's title is ever made by the heirs of the decedent as whose estate the land is sold, we think a different rule will prevail. Having allowed the confirmation of the sale to go unchallenged for three years, with Joshua Davis in possession,

his title became perfect upon payment of the purchase money, and related back to the confirmation by the court. The case of Leshey v. Gardner, 3 W. & S. 314, is in accordance with our view. It was there held that a confirmation by the orphans' court of a sale of real estate by an executor made in pursuance of its authority is not complete until the purchase money be paid and deed delivered. A sale and confirmation alone is not such a parting with the title as would defeat a pending action of ejectment by the executor.

Erb v. Erb, 9 W. & S. 147, decided that, "upon a sale of the real estate of an intestate by an order of the orphans' court for the payment of debts, the title remains in the heir until the contract of sale be executed by the payment of the purchase money and execution of the deed; hence upon the death of the heir subsequently to the confirmation of the sale by the court, and prior to the execution and delivery of the deed, his interest will descend as land and not as money."

Greenough v. Small et al., 137 Pa. 132, Dunlap's Appeal, 182 Pa. 273, and Stevenson v. Scott, 188 Pa. 237, are all cases showing that until a deed has been delivered the title of the heir is not divested. In this case no such question arises. No heir of the deceased owner contests the title or ever did. Joshua Davis's title was subject to be divested by having the sale set aside, but this was not done. The sale was confirmed. It does not appear what caused the delay in making the deed; but in the absence of exceptions to the confirmation of the sale and the completion of the title by deed, either Joshua Davis, if he had lived, or his estate after his death, would be entitled to a deed to confirm the title. It came as land no matter how the title was taken. If we suppose that no deed had ever been delivered, can it be contended that his title would not have been good, the heirs of Smith not contesting? Granting, therefore, that a perfect title did not vest in Joshua Davis until the delivery of the deed, as against the heirs of Rev. David Smith, we think, as against every one else, his legal title was perfected by the subsequent payment by his administrators and the deed to them, and related back to the confirmation by the court. His estate would have been liable for purchase money; his administrators could have asked for specific performance.

In the latter case the title could only have been asked to be made to Joshua Davis or to his heirs through him.

The next proposition advanced by plaintiffs is, that where the equitable title and the legal title meet in the same person, the equitable title is merged in the legal title, and the equitable title becomes wholly extinct, so that the estate descends at death as if the whole estate had been acquired by means of the legal title.

This proposition has for its premise the claim that Kezia and Sarah Davis obtained the legal title by purchase, and that Joshua Davis had but an equitable title. Purchase is thus defined by Littleton, section 12: "Purchase is called the possession of lands and tenements that a man hath by his own deed or agreement, unto which possession he cometh, not by title of descent from any of his ancestors or cousins, but by his own deed:" 1 Bouvier's Law Dictionary, p. 400. By new acquisition is meant an estate which the intestate has acquired by his own exertions and industry, or by will or deed of a stranger to his blood: 24 Am. & Eng. Ency. of Law (1st ed.), p. 396; Brewster v. Benedict, 14 Ohio, 385.

The payment by Joshua Davis's administrators out of the money of the estate was in no sense a payment by the heirs as individuals. It was still the decedent's money in the hands of his administrators, and payment by the administrators was payment by the decedent and for his benefit. Nor do the terms of the deed change the character of the estate conveyed. "For the use of the heirs" simply means that the estate was held by the state for the heirs subject to be vested in them under the intestate laws. The administrator of Smith could make no other deed than one to the purchaser or his representative, and such representative could only hold for the use of the heirs. In no sense was it a conveyance to them personally, but simply as they would take through their father. If the contention of plaintiffs is correct, Catharine Davis, the widow, might be deprived of her dower rights, although entitled to a share of the personalty had it not been paid for the land. By this course of reasoning the administrators could use all the personal fund to purchase land to vest in the heirs, and exclude the widow. In order to protect the rights of the widow the delivery of the deed can by a fiction be treated as made to her husband. In

Junk v. Canon, 34 Pa. 286, it was held, "If the delivery of the deed had been in fact for the benefit of the husband's estate, we might help out the intention by a fiction."

The question, "How did they obtain title?" is answered by the record—through their father, Joshua Davis, as his heirs, and, therefore, by descent from him.

The administrator of David Smith could not change the course of descent, nor convey an interest in the land to any person other than the one to whom the sale was made and confirmed.

In Thompson v. Rogers, 67 Pa. 39, Zook bought land at an orphans' court sale which was confirmed, and paid part of the purchase money, but no deed was made. Rogers by parol entered into partnership with him in milling, Zook's capital to be the land, Rogers's the machinery; both took possession. A judgment was recovered against Zook. Rogers afterwards paid the balance of the purchase money. The land was sold under the judgment, Rogers having given notice of his title to an undivided half. The administrator afterwards made a deed to Zook and Rogers. It was held that Rogers took no title under the administrator's deed. The administrator sold as an officer of the law; Zook the title by the sale; its confirmation and the deed could be effectual in no other way. The court said, "The administrator had no title to the land, and no authority to sell and convey except what he derived from the law and the order of the orphans' court." He had no right to convey to any other person.

Applying the principle thus laid down to this case, we are of opinion that the deed under which both parties claimed title could only have been made to Joshua Davis, or to his estate after his death, and no matter how expressed its effect was the same. The deed used apt words to express its purpose, "For the use of the heirs," etc., and they could not take as heirs, except by inheritance, which implies an inheritable estate in their ancestor.

Nor was this in any sense a merger of a legal and equitable estate in Kezia and Sarah Davis.

Whenever a greater estate and a less coincide and meet in the same person, without an intermediate estate, the less is

immediately annihilated, or, in law phrase, " merged," that is, " sunk or drowned in the greater : " 2 Bl. Com. 337.

And if there be a beneficial interest in any other person in the term there will be no merger : Dougherty v. Jack, 5 Watts, 456 ; Hartzell's Estate, 188 Pa. 384. If the widow had an interest the merger could not take place. Where the merger does not occur by mere operation of law, but is brought about by some act of the parties, the merger may depend upon their intentions. The intention, however, in order to control the question of merger, must have been an intent existing at the time the two estates came together : 15 Am. & Eng. Ency. of Law (1st ed.), p. 314, et seq.

As Kezia and Sarah Davis were minors at the time of the execution and delivery of the deed, they could not have formed or expressed such intent, and a merger could, therefore, only take place by virtue of the terms of the deed.

We have examined with much care the authorities cited by counsel for plaintiffs in their well prepared brief, but we are not convinced that they rule the case under consideration, and analysis of them would only swell this opinion to an unusual length without changing our conclusion.

We find, therefore, that Joshua Davis, through whom the title is derived by defendants, was the first purchaser, the title of defendants to the land in question is good : Sturgeon v. Hustead, 196 Pa. 148.

On the trial of this case all the facts necessary to a proper determination of the question of law involved being admitted, the court by consent directed a verdict for plaintiff, reserving the question of law as to whether there was any evidence to be submitted to the jury upon which the plaintiff would be entitled to recover.

And now, June 3, 1901, the rule for judgment not obstante veredicto is made absolute, and judgment is directed to be entered for defendants on the point reserved.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Richard C. Dale,* with him *George D. Howell* and *R. H. Lindsey,* for appellant.—Under the common law full seisin was

essential to the status of the ancestor who transmitted the inheritable blood—seisina facit stipitem.

In considering the canons of descent there must be in the ancestor both the legal title and possession in fact in order that the heir may deduce descent from such ancestor: Nicholson v. Halsey, 1 Johns. Ch. 417 ; Selby v. Alston, 3 Ves. Jr. 339 ; Wade v. Paget, 1 Brown Ch. 363 ; Higgins v. Higgins, 57 Ohio, 239 ; Russell v. Bruer, 64 Ohio, 1 ; Armington v. Armington, 28 Ind. 74 ; Stone v. Doster, 50 Ohio, 495 ; Shepard v. Taylor, 15 R. I. 204 ; Hopkinson v. Dumas, 42 N. H. 296 ; Logan v. Steele, 4 T. B. Mon. (Ky.) 430.

The case of an orphans' court sale is wholly different from sale on articles inter vivos. In the latter case a conversion takes place immediately, and the interest of the purchaser is an interest in the land, while the interest of the vendor is an interest in the purchase money only : Leshey v. Gardner, 3 W. & S. 319 ; Erb v. Erb, 9 W. & S. 147.

That title does not pass from the heirs of decedent until after the confirmation of sale and delivery of deed is decided in many cases, principal of which are : Biggert's Estate, 20 Pa. 17 ; Overdeer v. Updegraff, 69 Pa. 110 ; Strange v. Austin, 134 Pa. 96 ; Greenough v. Small, 137 Pa. 132 ; Emerick's Appeal, 172 Pa. 191 ; Dunlap's Appeal, 182 Pa. 267 ; Morgan's Appeal, 110 Pa. 271 ; Demmy's Appeal, 43 Pa. 155 ; McRee's Estate, 6 Phila. 75.

*H. L. Robinson,* of *Robinson & McKean* and *Nathaniel Ewing,* for appellee.—The member of the family who pays the price, with the intention of acquiring the estate to himself and to his heirs is the ancestor: Hart's App., 8 Pa. 32 ; Lewis v. Gorman, 5 Pa. 164 ; Maffit v. Clark, 6 W. & S. 258 ; Simpson v. Hall, 4 S. & R. 343 ; Magee v. Magee, 1 Pa. 405 ; Hartman's Estate, 4 Rawle, 39.

We claim that the relation of Joshua Davis's children to the acquisition of their estate in this land was not such as to render them purchasers under the law of Pennsylvania: Thompson v. Rogers, 67 Pa. 39.

PER CURIAM, May 26, 1902 :

The judgments are affirmed on the opinion of Judge WEAND. Judgment affirmed.