## Thompson's Estate.

*Partition—Decedent's real estate—Purparts—Bids—Awards.*

In proceedings for the partition of a decedent's real estate held by a brother and sister as tenants in common, the property was divided into purparts; in a part of the brother's interest in one purpart the sister had a life interest valued by the inquisition at $550; the purpart was valued at $25,850. The brother bid $30,160, subject to the sister's life interest which should be paid in addition to the bid. The sister bid $30,251, and her counsel stated in open court that it was made subject to the sister's life estate. The court awarded the purpart to the sister, on the ground that her bid was the highest and best. *Held*, that as the sister's life interest was a charge upon the brother's estate, he added nothing substantial to his bid by stating that he took subject to the life estate; inasmuch as he could not escape liability for said life interest by the partition proceedings, and that without reference to what was said in open court, the sister's bid was the highest and best, and the decree was affirmed.

Argued Jan. 11, 1916. Appeal, No. 382, Jan. T., 1915, by Edward Shippen Thompson, from decree of O. C., Juniata Co., refusing to set aside an award of a purpart,

in partition proceedings, in Estate of Theodore Samuel
Thompson, Deceased.  Before BROWN, C. J., MESTRE-
ZAT, STEWART, FRAZER and WALLING, JJ.  Affirmed.

Petition for an inquest in partition.  Before SEIBERT,
P. J.

The opinion of the Supreme Court states the facts.

The land was divided into seven purparts, numbered
consecutively.  The bids for purpart No. 1 were received
and opened in open court.  The court awarded purpart
No. 1 to Emily Cassel Haldeman, she being, in the view
of the court, the highest and best bidder, and subsequent-
ly refused to set aside the award.  Edward Shippen
Thomson appealed.

*Error assigned* was in awarding the purpart to Emily
Cassel Haldeman, and in refusing to set aside the award.

*Jas. M. Barnett,* with him *J. N. Keller* and *J. Howard
Neely,* for appellant.

*F. M. M. Pennell,* with him *LeRoy J. Wolfe,* for ap-
pellee.

OPINION BY MR. JUSTICE WALLING, March 6, 1916:

This is an appeal from a decree awarding a purpart in
partition.

Theodore Samuel Thompson died testate in 1904, and,
subject to a life estate in his widow, devised all his real
estate in fee to his three surviving children, to wit: Wil-
liam H. M. Thompson, Emily Cassel Haldeman and Ed-
ward Shippen Thompson, to share alike.

Said William H. M. Thompson died testate in 1906.
The part of his will material to this case being:

"To my brother, Edward Shippen Thompson, of Co-
lumbia, Penna., I give and bequeath my interest in the
estate of my late father, T. S. Thompson, with the ex-
ception of my interest in the house wherein I now reside

which I give to both my brother, and to my sister for her life, it then to revert to my brother, my brother will pay annually the sum of ———— to my sister Emily as long as she lives, payment then to cease."

By the death of their mother in 1914, appellant and appellee became the sole owners of said real estate; and thereupon this proceeding for partition thereof was had at his instance. The inquisition divided the estate into seven purparts, No. 1 being valued at $25,850.00; and, as to the house thereon, the inquisition states that:

"They value and appraise the undivided one-sixth interest in the mansion house and curtilage as the basis on which shall be computed the life interest of Emily C. Haldeman under the will of W. H. M. Thompson, deceased, at the sum of five hundred and fifty dollars."

Pursuant to rule the parties appeared in court on April 26, 1915, and submitted sealed bids for said purpart; that of Mr. Thompson being for the "sum of $30,-160.00, or an advance of $4,310.00 on said valuation, subject to the life interest of $33.00 per annum in Emily Cassel Haldeman, which shall be paid in addition to this bid." And that of Mrs. Haldeman being $30,251.00, or $4,401.00 above the valuation. The court before announcing the bids stated in effect that one was and one was not made subject to Mrs. Haldeman's life estate. Whereupon her counsel stated in open court:

"That her bid was made subject to the life estate of herself in the undivided one-sixth of the mansion house on purpart No. 1, and that if awarded to her her said life estate merged in the fee."

After discussion by counsel the court with that understanding awarded said purpart to appellee, on the ground that her bid was the highest and best. No objection was made thereto at the time and appellant's counsel prepared the decree for such award. Then five of the remaining purparts were in due course awarded to appellant and one to appellee; and at the request of counsel the matter was continued to May 7, 1915. At

which time counsel for appellant asked for an exception to said decree awarding purpart No. 1, to appellee; and also presented appellant's petition praying that said decree be set aside and such purpart awarded to him on the ground that his bid was in reality the highest and best. Appellee filed an answer averring inter alia:

"That in consequence of purpart number one having been awarded to her, respondent did not bid upon purpart number two, and materially changed her bidding for the other purparts."

To which a replication was filed and some testimony taken. The court after careful consideration dismissed said petition. The errors assigned are the decree awarding purpart No. 1, to Mrs. Haldeman and the dismissal of said petition.

Appellant's earnest contention that his bid is higher because it is subject to appellee's life estate seems to overlook the important fact that such life estate was a charge solely upon his part of the estate. He and his sister each derived a one-third interest in fee under their father's will; then he obtained the other one-third under his brother's will, but took it subject to the one-half of the one-third life interest in the mansion house given the sister. That is, by her brother's will, to her one-third was added a life estate in one-half of one-third, or one-sixth of the mansion house, but of course that one-sixth life estate was no charge upon her original one-third, but was a charge upon the one-third of the estate received by appellant from his brother. And if that were all, in this partition she would be entitled to that much more than one-third and he to that much less than two-thirds of the estate.

As such life interest was a charge upon his estate he added nothing substantial to his bid by stating that he took subject thereto. He could not take otherwise nor escape liability for her said life interest in the mansion house by a partition. Where all parties are represented their respective interests however acquired may be ad-

justed in one proceeding; and where, as in this case, they are all before the court it is competent to ascertain and charge or secure a life interest which has arisen since the death of him whose estate is being partitioned: Baker v. Leibert, 125 Pa. 106. And see Martin's Est., 1 Chester County Rep. 512. Eliminating as unimportant that part of appellant's bid, which refers to the life estate, the bid of appellee is the higher and better bid, without reference to what was said in court in explanation thereof, and entitles her to the property.

However, her life estate will merge in the fee and disappear on the consummation of the partition.

"Whenever a greater estate and a less coincide and meet in the same person, without an intermediate estate, the less is immediately annihilated, or, in law phrase, merged, that is sunk or drowned in the greater": 2 Blackstone's Com. 337. See also Lineberger v. Newkirk, 179 Pa. 117; Kreamer & Miller v. Fleming, 191 Pa. 534-537; Frick Coke Co. v. Laughead, 203 Pa. 168-173.

The statements made in court show an intention to terminate the life estate and hence put the question of merger beyond all possible doubt. As her life estate is gone appellee can receive no credit therefor in the adjustment of valuations, and in effect her bid was as much subject to the life estate as that of appellant. While this conclusion may seem unjust to her, it is the result of the merger, and in harmony with the understanding of the parties when the allotment was made.

We do not deem it necessary to refer to other questions in the case.

The assignments of error are overruled and the judgment is affirmed at the cost of the appellant.