## Mostoller v. Pile

*A. M. Matthews* and *William R. Hughes*, for plaintiffs.

*James R. Cascio*, of *Fike, Cascio* and *Boose, P.A.*, for defendants.

SHAULIS, *J.*, March 9, 1977—Plaintiffs, Allen and Martha Mostoller brought this action to quiet title to approximately 508 acres of coal located in

Stonycreek Township. Plaintiffs claim title to both the surface and coal estates of the 508 acres, the claim to the coal resting upon a sheriff's sale in 1953. Defendants Russell and Ruth Pile do not deny plaintiffs' title to the surface, but claim title to the coal directly through a tax sale to them in 1970 and ultimately through a tax sale to County Trust Company in 1952.

Plaintiffs have filed a motion for judgment on the pleadings; defendants have filed a motion for summary judgment. Judgment on the pleadings under Pa.R.C.P. 1034 must rest only on the pleadings; summary judgment under Pa.R.C.P. 1035 may be based upon other information submitted as part of the record. In either situation, there must be no issue of material fact and judgment is rendered only in clear cases where a party is entitled to recover as a matter of law. See generally: 2 Goodrich-Amram 2d §1035(a):3; Intermediate Unit 8 v. Charlesworth, 30 Somerset 53.

Since the parties here have stipulated to and offered various deeds and official records outside the pleadings, we will consider the motions before us as cross motions for summary judgment. Summary judgment may be rendered in favor of either party, even against the "moving party." See, e.g.: 2 Goodrich-Amram 2d §1035(b):6; Port Authority of Allegheny County v. Flaherty, 6 Pa. Commonwealth Ct. 135 (1972); Shapp v. Sloan, 27 Pa. Commonwealth Ct. 312, 367 A. 2d 791 (1976).* We agree with the parties that summary judgment is an appropriate disposition of this quiet title action. See, Pa.R.C.P. 1061 and 1066.

*Accord, Intermediate Unit 8 v. Charlesworth, supra, but see Paulish v. Bakaitis, 442 Pa. 434, 442-3, 275 A. 2d 318 (1971).

## FACTS

The record contains the following relevant facts:

1. On January 22, 1918, Heller Coal Company held title to a 285 acre surface estate, the subjacent 285 acre coal estate, and the adjacent 222 acre coal estate. Deeds recorded at Deed Book Vol. 208, page 331 and Vol. 209, page 302.

2. On July 15, 1922, Harvey Mostoller held title to the 222 acre surface estate. Recorded at Deed Book Vol. 261, page 133.

3. On October 2, 1936, at suit of County Trust Company upon default by Heller Coal Company, sheriff Fred Hare conveyed the 285 acre estate, both surface and coal, and the 222 acre coal estate to County Trust Company. Recorded at Sheriff's Deed Book 4, page 87.

4. On March 30, 1943, County Trust Company conveyed to Joseph Gross the 285 acre estate, both surface and coal, and the 222 acre coal estate. Recorded at Deed Book Vol. 332, page 577.

5. On July 22, 1949, County Trust Company filed a judgment note against Joseph Gross as a lien against all real estate. Docketed as 727 C.D. 1949.

6. On August 4, 1952, Tax Sale Number 8176, "80 acres clear, 205 timber" assessed to Joseph Gross were sold to County Trust Company for unpaid taxes 1949-50. Deed not recorded.

7. On August 4, 1952, Tax Sale Numbers 8177-78, "508 acres mineral, 472 exhausted, C & D Vein" assessed to Joseph Gross were sold to County Trust Company for unpaid taxes 1949-50. Deed not recorded.

8. On September 4, 1953, at suit of County Trust Company upon default by Joseph Gross in execution of 727 C.D. 1949, sheriff Fred Hare conveyed the 285 acre estate, both surface and coal, and the

222 acre coal estate to Harvey Mostoller. Recorded at Sheriff's Deed Book 4, page 441.

9. On August 4, 1958, Tax Sale Number 8953, "508 acres mineral, 472 exhausted, C Vein" assessed to County Trust Company were offered for sale for unpaid taxes 1955-56. Not purchased, assigned to county commissioners. Deed not recorded until April 20, 1971, Deed Book Vol. 698, page 456.

10. On May 8, 1959, Harvey Mostoller conveyed the 285 acre estate, both surface and coal, and the 222 acre estate, both surface and coal, to his son, Allen Mostoller, plaintiff-husband. Deeds recorded at Deed Book Vol. 533, page 388 and Vol. 567, page 268.

11. On September 15, 1970, Tax Sale Number 10314, "508 acres C Vein, 472 exhausted" assessed to County Trust Company were sold to defendants Russell and Ruth Pile for unpaid taxes 1955-70. Recorded at Deed Book Vol. 697, page 314.

12. From 1918 to 1936, assessment was made to Heller Coal Company as a 285 acre surface estate and a 508 acre coal estate.

13. From 1936 to 1943, assessment was made to County Trust Company as a 285 acre surface estate and a 508 acre coal estate.

14. From 1943 to 1954, assessment was made to Joseph Gross as a 285 acre surface estate and a 508 acre coal estate.

15. For the year 1955, assessment was made to County Trust Company as a 285 acre surface estate and a 508 acre coal estate.

16. From 1922 to 1955, the 222 acre surface estate was assessed to Harvey Mostoller.

17. From 1956 to 1959, assessment was made to Harvey Mostoller of the 222 acre surface estate and separately of the 285 acre surface estate.

18. From 1960 to 1970, the surface estates were assessed to Allen Mostoller, plaintiff-husband.

19. From 1955 to 1970, the 508 acre coal estate was assessed to County Trust Company.

20. At no time have plaintiff Allen Mostoller or his predecessor, Harvey Mostoller, been delinquent in payment of taxes assessed to them.

## DISCUSSION

Prior to 1918, the property which plaintiffs now claim to own as one tract had been broken down and conveyed as four separate parts—the 285 acre coal estate, the 285 acre surface estate, the 222 acre coal estate, and the 222 acre surface estate. Heller Coal Company became the single owner of the first three parts in 1918, and these three parts remained in the hands of a common owner from 1918 until the challenged tax sale in 1952. Plaintiff Allen Mostoller's father purchased the fourth part, the 222 acre surface estate, in 1922.

Plaintiffs assert that the 1952 tax sale was invalid and when Harvey Mostoller purchased the three parts at the 1953 sheriff's sale, he became owner of all four components of the 508 acre estate, both surface and coal. Plaintiffs then assert, since one person owned the whole estate from 1953 on, the 1970 tax sale is invalid since it was based on double assessments. On the other hand, defendants assert that County Trust Company obtained title to the three parts at the 1952 tax sale; that County Trust Company reserved the 508 acre coal estate; and that if anything passed to Harvey Mostoller through the 1953 sheriff's sale, it was only the 285 acre surface estate. Thus, defendants conclude that the assessments were correct and the 1970

sale for taxes unpaid on the 508 acre coal estate did pass good title to defendants.

The arguments presented by the parties here can be summarized as two basic legal issues: "Is the title claimed through Harvey Mostoller at the 1953 sheriff's sale superior to the title claimed through County Trust Company at the 1952 tax sale?" and "Is the title claimed by defendants at the 1970 tax sale invalid if the unpaid taxes were the result of improper assessments?"

A quiet title action is the appropriate forum for testing the validity of titles obtained at tax sales: Price-Jeffries Co. v. Tillman, 11 Pa. Commonwealth Ct. 153, 312 A. 2d 494 (1973). In an action to quiet title it is usually stated that plaintiff must recover on the strength of his own title, not the weakness of defendant's claim. See: Albert v. Lehigh Coal & Nav. Co., 431 Pa. 600, 607 (1968); Pritts v. Henry (No. 2), 33 Somerset 310 (1976); 30 P.L.E. §21, 330. We believe plaintiffs here have met this burden and that the above-stated questions must be resolved in plaintiffs' favor. Accordingly, we deny defendants' motion for summary judgment and enter summary judgment for plaintiffs.

### The 1952-1953 Sales

Plaintiffs initially argue that the 1952 tax sale itself is invalid because it was based upon improper assessments. The argument is that all contiguous property, whether adjacent or subjacent, owned by the same person must be assessed as one parcel in one assessment, rather than as separate pieces. Here, although a common owner held title to three contiguous tracts, the assessment was in two parcels—one for the 285 acre surface estate and

one for the 508 acre coal estate. Since the assessor had merged the two separately acquired, yet adjacent, coal estates and assessed it as one, plaintiffs suggest that the assessor should have merged all three parts held by the common owner. Separate assessments would be improper double assessments and would make any sale based upon such unpaid taxes invalid. This argument is appealing, but we need not decide this point in regard to the 1952 tax sale, and will defer further discussion of the double assessment problem until considering the validity of the 1970 tax sale. There are additional reasons why we hold that title passed to Harvey Mostoller by the 1953 sheriff's sale rather than to County Trust Company under the 1952 tax sale.

The 1952 tax sale was for taxes unpaid by Joseph Gross for 1949-50. At the tax sale on August 4, 1952, County Trust Company purchased the 285 acre surface estate and the 285 and 222 acre coal estates (which had been assessed as one 508 acre coal estate). Deeds were delivered to County Trust Company on November 14, 1952, but have never been recorded. At the same time that County Trust Company purchased the property at tax sale, it had a judgment lien recorded on the same property, filed on July 22, 1949. County Trust then had this lien executed upon at a sheriff's sale on September 4, 1953. At the sheriff's sale, there was no notice to purchasers that County Trust had already purchased the property it was having sold. The deed delivered to Harvey Mostoller by the sheriff on October 1, 1953, made no mention of any reservation or exception of any kind by County Trust Company.

A tax lien automatically dates from the first day of the year for which the taxes are imposed or assessed: Act of May 16, 1923, P.L. 207, as amended,

53 P.S. §§7101, 7102; Reading Trust Co. v. Campbell, 159 Pa. Superior Ct. 197, 48 A. 2d 72 (1946). The lien upon which the 1952 tax sale was based dated, then, from January 1, 1949. Superficially, it would seem that the tax sale with lien dating from January 1, 1949, has priority over the sheriff's sale with lien dating from July 22, 1949.

However, County Trust did not record its tax sale deed. A tax deed must be recorded just as must any other deed: 36 P.L.E. 454, §442; Act of May 21, 1943, P.L. 571, as amended, 72 P.S. §5453.605a; Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §5860.608. Despite a presumption of good title in the possessor of a tax deed, the presumption falls when the regularity of the deed is questioned. See: 36 P.L.E. 457, §443; Curtis Building Co. v. Tunstall, 21 Pa. Commonwealth Ct. 81, 343 A. 2d 389 (1975); Hughs v. Chaplin, 389 Pa. 93, 132 A. 2d 200 (1957).

Unrecorded deeds have no effect upon the title acquired by a bona fide purchaser: Act of May 12, 1925, P.L. 613, as amended, 21 P.S. §§351, 443, 444. See, e.g.: Wheatcroft v. Albert Co., 407 Pa. 97, 180 A. 2d 216 (1962); U.S. v. 137.02 Acres of Land in Centre County, 334 F.Supp. 1021 (M.D.Pa. 1971). Generally, the purchaser at a judicial sale has the status of a bona fide purchaser unless he can be charged with actual or constructive notice of an outstanding interest: 21 P.L.E. 29, §§18-24. See, e.g.: Sheaffer v. Baeringer, 346 Pa. 32, 29 A. 2d 697 (1943); In Re Dennis Mitchell Industries, 280 F.Supp. 433 (E.D. Pa. 1968). A purchaser at a sheriff's sale is a bona fide purchaser and entitled to the protection of the recording statutes: Bradley v. Price, 17 D. & C. 2d 368, aff'd 396 Pa. 234, 152 A. 2d 904 (1958).

We do not understand how County Trust Company could have forced a sheriff's sale in 1953 if it already owned the property offered for sale, and then after the sale attempt to assert title superior to that of a purchaser who had no knowledge that the sheriff actually had no title to offer. Consequently, we hold that the title to the three parts of the property here in question passed to Harvey Mostoller by the 1953 sheriff's sale free of any interest which County Trust claimed to have by the 1952 tax sale.

Having concluded that any interest claimed by County Trust Company through the 1952 tax sale is invalid, we still must resolve the effect, if any, of the tax liens on the property which passed to Harvey Mostoller through the 1953 sheriff's sale. Taxes are a first lien and must be paid first from the proceeds of any sale of the liened property: 53 P.S. §§7102-7103; 72 P.S. §5860.301. A tax lien is divested by a judicial sale of the property, provided the amount of money realized equals the amount of the unpaid taxes. It is the duty of the officer having taxes for collection to notify the officer selling the land of the taxes due and to have the taxes paid from the proceeds. See: 36 P.L.E. 263, §267; 53 P.S. §§7104, 7105, 7281; 72 P.S. §5860.304; Liss v. Medary Homes, 388 Pa. 139, 130 A. 2d 137 (1957).

The sheriff's schedule of distribution of the 1953 sale shows proceeds of $3,100. $399.25 was paid to the Treasurer of Somerset County for unpaid taxes for the years 1949-52. This payment divested the tax lien and passed clear title to Harvey Mostoller. Even if all unpaid taxes had not been fully paid, the tax lien would have been divested since a tax lien is divested as long as the fund is sufficient to pay the taxes regardless of whether or not the fund is actually applied to the full payment of taxes due. See,

e.g., Harrisburg Trust Co. v. Romberger, 135 Pa. Superior Ct. 394, 5 A. 2d 597 (1939); Avalon Borough School Dist. v. Weeks, 118 Pa. Superior Ct. 85, 179 Atl. 913 (1935); Swartzlander Petition, 39 D. & C. 2d 425 (1965); Berks County Trust Co. v. Wymbs, 53 D. & C. 115 (1945); Ladamus v. Luzerne County, 38 Luz. 157 (1944); Throop School Dist. v. Comoratt, 43 Lack. Jur. 147 (1941).

The sheriff's schedule also shows $1,864.34 was paid to County Trust as "balance due, principal and interest in full" on the judgment of 727 C.D. 1949. Thus, the lien which was the basis of the sheriff's sale was also divested by the sheriff's sale. See 21 P.L.E. 36, §22.

The sheriff's deed to Harvey Mostoller specifically gave the coal of the 222 acre estate and the 285 acre estate "together with the right of prospecting and putting down test wells upon the surface of the said land and the right to mine and remove coal and minerals from under the same." Even if the sheriff's deed had not contained this clause about the 285 acre estate, the deed would have conveyed both surface and coal since the absence of an exception or reservation of mineral rights is held to convey both surface and coal. See, e.g.: 24 P.L.E. 140, §11; Moreland v. H. C. Frick Co., 170 Pa. 33, 32 Atl. 634 (1895).

We hold that the sheriff's sale in 1953 passed title to both the 285 acre surface estate and the 508 acre coal estate to Harvey Mostoller. This title is superior to any title claimed by County Trust Company through the 1952 tax sale. The 1953 sheriff's sale divested any tax lien or judgment lien on the property, and the property passed to Harvey Mostoller free of any exception or reservation by the County Trust Company of any mineral or coal

rights or estates. Defendants can claim no interest to the 508 acre coal estate through reliance on the 1952 tax sale to County Trust Company.

## The 1970 Sale

Harvey Mostoller acquired title to the 222 acre surface estate in 1922. He acquired title to the 285 acre estate, both surface and coal, and the 222 acre coal estate in 1953. He transferred title to these estates to plaintiff Allen Mostoller in 1959, thus, there has been one common owner of all four components of the property since 1953.

Pennsylvania law recognizes three separate estates in land: the surface itself, the right to support, and the minerals contained thereunder: Smith v. Glen Alden Coal Co., 347 Pa. 290, 32 A. 2d 227 (1943); Pa. Bank & Trust Co. v. Dickey, 232 Pa. Superior Ct. 224, 335 A. 2d 483 (1975).

When there is no separate conveyance of the coal or the interest therein, the surface and underlying coal are held by the surface owner. His boundary lines upward and downward are indefinite. An interest in coal may be created by a conveyance which, in effect, draws a horizontal boundary line through the earth in order to create separate ownership of the underlying coal. This severs title and creates a separate and distinct estate in the coal. Both titles are separately governed by all principles of law and equity relating to real property, its use and enjoyment, and the nature and quality of interests therein. See: Haydu v. Com., 27 Somerset 322. See also: 1A Thompson, Real Property, §§159-161 (1964); Bushong, Penna. Land Law, pages 112-14 (1938); 24 P.L.E., 140-194, §§11-20.

Just as the coal estate can be severed, it can be merged back into the surface estate if an absolute

fee in both is held by the same person. "One estate may be merged or absorbed into another under the general principle of law known as the doctrine of merger of estates." 14 P.L.E. §9, at 9-11. See, e.g., Frick Coke Co. v. Laughead, 203 Pa. 168, 52 Atl. 172 (1902).

We may draw an analogy of the merger of surface and coal estates with the merger of dominant and servient estates of an easement. When the same person becomes the owner of both the dominant and servient estates, the easement is extinguished if there is no intervening or outstanding interest or title held by some other person in or to the easement: 12 P.L.E. 464, §15, at 465. See also: 28 C.J.S. 720, §57; Schwoyer v. Smith, 388 Pa. 637, 131 A. 2d 385 (1957). A relevant example is McClure v. Monongahela Southern Land Co., 263 Pa. 368, 107 Atl. 386 (1919), where a previous owner of a coal estate which had been exhausted was not permitted to reopen a mine opening on plaintiff's property to remove coal from adjacent tracts.

The Fourth to Eighth Class County Assessment Law of May 21, 1943, P.L. 571, 72 P.S. §5453.101 et seq., prescribes the duties of the county assessor. Section 5453.616 provides that "[t]he assessor shall hereafter assess coal and surface separately in cases where the life tenant of land has not the right to operate the coal underlying said surface." See also: 24 P.L.E. 262, §54; Mathies Coal Co. Appeal, 435 Pa. 129, 255 A. 2d 906 (1969); Sanderson v. Scranton, 105 Pa. 469 (1884).

Conversely, where the surface and underlying minerals are owned by the same person, they should not be separately valued and assessed. See: 36 P.L.E. §135, at 91; Washington County v. Marquis, 233 Pa. 552, 559, 82 Atl. 756 (1912).

Defendants suggest that there must be a deed to merge estates and the assessor has no duty to merge contiguous property (whether adjacent— "side-by-side" or subjacent—"on-top-of-another"), but that the owner must request the assessor to merge. In light of the statutory duty of the assessor to maintain records of ownership (72 P.S. §5453.403) and the statutory duty of the recorder to notify the assessor of transfers (72 P.S. §5453.605), we are convinced the assessor has a duty to determine who the owner is and merge coal and surface when owned by the same person. In fact, since the assessor sometime after 1918 had assessed the coal estate as 508 acres instead of as the two parcels that it had originally been conveyed as, it is apparent that the assessor had considered it his duty to assess as one, or merge, two contiguous properties owned by the same person. As suggested at the beginning of our discussion of the 1952 tax sale, there is some question as to why the assessor merged two adjacent coal estates yet failed to include the accompanying surface estate when all three parts were contiguous and owned by the same person. Our resolution of the 1952 tax sale issue does not require us to answer this question.

There are some older Pennsylvania Supreme Court cases which emphasize the affirmative duty of the assessor to merge contiguous estates. In City of Scranton v. Gilbert, 16 W.N.C. 28, 31 (1885), the court said:

"Coal in place is undoubtedly a portion of the real estate. It is a part of the land. If the ownership of the two be severed the separate interest of each owner in the land may be taxed separately. . . . The aggregate valuation thereon should be the same as

if both interests were united in one person. *If the title to the surface and to the coal be owned by one person, they cannot be separately valued and separately assessed.* When thus owned, they are indivisible parts of the land for all purposes of taxation . . . The separate valuation of the coal is wholly unauthorized, and therefore cannot be sustained." (Emphasis supplied.) See also: Brown v. Hays, 66 Pa. 229 (1871); Wilmoth v. Canfield, 76 Pa. 150 (1874).

In McCormick v. Berkey, 238 Pa. 264, 281, 86 Atl. 97 (1913) (a Somerset County case), the court said: "Under the settled rule, therefore, it was the duty of the taxing officers to assess the surface and the minerals together as an entire body of real estate belonging to the owner. There was no authority in law for separating the minerals from the surface and assessing them separately." See also: Muccioli v. Kaminski, 81 D. & C. 561 (1951).

These cases are still good law, and we hold that when contiguous estates are subjacent and owned by the same person they must be assessed as one.

The validity of a tax sale is dependent on a valid assessment. See, e.g., Hunter v. McKlveen, 361 Pa. 479, 65 A. 2d 366 (1949). Absent a delinquency in the payment of taxes, a tax sale based upon such delinquency must fall. See Albert v. Lehigh Coal & Nav. Co., 431 Pa. 600, 613, 246 A. 2d 840 (1968), and cases cited therein. A tax sale where the assessment was invalid is void, and no interest passes to the purchaser: Urban Redevelopment Condemnation Case, 406 Pa. 6, 178 A. 2d 149 (1961). When a delinquency is based upon failure to pay a double assessment, there is no delinquency and a sale based on such nonpayment is invalid: Albert,

supra, at 614; West Reading v. Hinnershitz Estate, 27 Berks 143 (1935).

Here, all the property has been owned by one person since 1953 and the assessments as separate surface and coal estates have been improper. Further, the assessment of coal to County Trust Company from 1955 to 1970 has been improper since County Trust Company had no interest in the property at that time. The property should have been assessed as one parcel to Harvey Mostoller and his successor, Allen Mostoller. The nonpayment of taxes by County Trust Company which was the basis of the 1958 and 1970 tax sales were based on double assessments. These sales were invalid and can pass no title to defendants. The fact that defendants apparently purchased in good faith at the 1970 sale and may have paid taxes since then will not serve to validate a sale which was initially invalid: In re: Luzerne County Tax Claim Bureau Sale of Real Estate Situate at Black Creek Township, 66 Luz. 255 (1976).

Plaintiff has also raised various procedural irregularities with the notice requirements of the 1970 tax sale. We need not address this issue, but will mention that the notice provisions of tax sale statutes, e.g., Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §5860.602, must be strictly followed. See, e.g., Turney Tax Sale, 30 Somerset 161; Everett, Inc. v. Ayres, 22 Pa. Commonwealth Ct. 422, 349 A. 2d 514 (1975).

We also note that defendant has raised a point about "saving statutes" for tax sales. The Act of May 6, 1970, P.L. 355, 72 P.S. §5878f, does cure certain procedural defects in tax sales prior to December 31, 1952, but has no effect upon the 1970 sale. In regard to the 1952 sale, the statute applies

only to defects in notice. Such remedial statutes may cure certain irregularities in tax sales, but cannot give validity to jurisdictional defects or vital irregularities such as double assessment. Albert, supra, 431 Pa. at 615. This curative statute offers no help to defendant.

In conclusion, we hold that plaintiff, Allen Mostoller, now holds title to both the surface and coal estates of the 508 acre tract in Stonycreek Township. Accordingly, we enter the following

## ORDER

Now, March 9, 1977, it is ordered and decreed as follows:

1. Summary judgment is entered for plaintiff-husband, Allen Mostoller.

2. Tax Sales numbers 8176, 8177, 8178, 8953 and 10314, described in the foregoing opinion, are hereby declared invalid and void.

3. Plaintiff Allen Q. Mostoller holds title to the property, both surface and coal, described in the foregoing opinion.

4. Defendants are forever barred from asserting any right, title, or interest in said land, and are further barred from making any claim of title to said land and from impeaching, denying or in any way attacking Allen Q. Mostoller's title as described in the foregoing opinion.

5. The Recorder of Deeds and Tax Claim Bureau of Somerset County are hereby ordered and directed to mark invalid and cancel any deeds or documents by which defendants claim title to said land described in the foregoing opinion.

Each party shall pay their own costs.

## OPINION ON EXCEPTIONS

SHAULIS, *J.*, This case is before the court on exceptions filed by defendants to an opinion and order. Coffroth, *P.J.*, having disqualified himself, the exceptions were heard by Judge Shaulis alone. After hearing arguments on the exceptions and a complete review, we find no merit in any of the exceptions.

Accordingly, the court makes the following

## FINAL ORDER

Now, June 24, 1977, the exceptions are dismissed and the prothonotary is directed to enter a final judgment.

Costs of the exceptions and this order on defendants.

Editor's note: Affirmed per curiam by the Superior Court, ____ Pa. Superior Ct. ____, 393 A.2d 1294 (1978).